Gilberto Guadalupe REYES, Appellant,

v.

The STATE of Texas.

No. 73805.

Court of Criminal Appeals of Texas.

Sept. 11, 2002.

**634**

Mike Brown, Lubbock, for Appellant.

Roy Carper, Farwell, Matthew Paul, State's Attorney, Austin, for State.

### OPINION

MEYERS, J., delivered the opinion of the Court in which KELLER, P.J., and WOMACK, JOHNSON, HERVEY, HOLCOMB, and COCHRAN, JJ., joined.

On January 31, 2000, appellant was convicted of capital murder. TEX. PENAL CODE ANN. § 19.03(a)(2). Pursuant to the jury's answers to the special issues set forth in Texas Code of Criminal Procedure Article 37.071, §§ 2(b) and 2(e), the trial judge sentenced appellant to death. Art. 37.071, § 2(g).[1] Direct appeal to this Court is automatic. Art. 37.071, § 2(h). Appellant raises four points of error, including a challenge to the sufficiency of the evidence at the guilt/innocence phase of the trial. The sufficiency point will be addressed first, followed by the remainder of the points in the order in which they are raised. We will affirm.

Appellant was indicted for murdering Yvette Barraz while in the course of committing or attempting to commit kidnap-

ping. The evidence at trial showed that appellant and Barraz had dated for approximately eight months before their relationship ended in January 1998. At around 6:00 p.m. on March 11, 1998, nineteen-year-old Barraz left her parents' house for her waitressing job at Leal's Restaurant in Muleshoe, Texas, driving her 1996 silver Mitsubishi Eclipse.[2] Yolanda Jaramillo, Barraz's co-worker, testified that after work Barraz had left the restaurant before Jaramillo had and that Barraz's car was not in the parking lot when Jaramillo left approximately twenty minutes later.

When Barraz failed to return home by the next morning, Barraz's parents called the police. Upon receipt of the call, police officers went to the parking lot of Leal's Restaurant where they discovered blood on the ground with some loose change nearby. Barraz's mother testified that Barraz generally kept the coins and dollar bills that she received as tips in the apron that she wore as part of her waitress outfit.

At around 11:45 p.m. on March 11, 1998, appellant arrived at his cousin's home in Pecos, Texas. Appellant spoke with Natividad Ovalle, Jr., his cousin's husband, and asked him how to get to Ojinaga, Mexico. Ovalle testified that when appellant left his home, he observed appellant drive away in a "small gray car."

Several hours later, on the morning of March 12, sometime between 3:30 a.m. and 4:00 a.m., appellant was observed by officers at the border check point in Presidio, Texas walking on the highway heading towards Mexico. Because of a series of recent burglaries that had occurred in the

---

1. Unless otherwise indicated, all future references to Articles refer to the Texas Code of Criminal Procedure.

2. Barraz's mother testified that Barraz's vehicle could be described as either gray or silver in color.

area, the Presidio Sheriff's Office had previously advised officers at the check point to be on the lookout for any persons who were crossing the port of entry "under unusual circumstances." Officers stopped appellant and asked him to empty his pockets. Appellant had in his possession a couple of sets of keys, a large amount of currency including one dollar bills and five dollar bills, and a couple of handfuls of change. Appellant told the officers that one of the keys was the key to his girlfriend's car. Once a records check was completed on appellant, and it was determined that appellant was not involved in the Presidio burglaries, he was permitted to cross the bridge into Mexico.

On March 13, 1998, authorities at the Presidio County Sheriff's Office received a teletype informing them that appellant was connected to a missing person and that it was possible that he used a gray 1996 Mitsubishi to get to Presidio. The authorities located Barraz's car parked behind a store about half a mile from the border in Presidio. Barraz's body was found in the hatchback area of the vehicle under some articles of clothing. Her pants and underwear were pulled down to her knees. She had multiple head wounds and a laceration on one of the fingers of her left hand. There was a knife on the back floorboard of the car and a claw hammer on the passenger side between the seat and the edge of the door rail. Sergeant Dusty McCord, a Sergeant with the Texas Ranger Division of the Department of Public Safety, testified that he observed bloodstains on the passenger-side seat belt and "blood pooling" in the hatchback area and on the floorboard behind the passenger seat. It appeared to McCord that "the

body had been moved around two or three locations in the back of the vehicle."

Appellant was arrested in Portales, New Mexico, on June 7, 1998. He had in his possession some keys. One of the keys matched the lock at the Barraz residence, and another key appeared to be a duplicate of the extra key to Barraz's Mitsubishi Eclipse. Samples of appellant's blood and hair were collected once he was transported back to Texas.

Javier Flores, a forensic serologist for the Texas Department of Public Safety Laboratory, performed DNA testing on the evidence collected from the crime scene and on the samples taken from appellant. Flores testified that Barraz's DNA matched the bloodstains in the restaurant parking lot, inside the vehicle, and on the claw hammer. He also found that appellant's DNA matched a semen stain on Barraz's underwear.[3]

Glen Groben, the deputy medical examiner in Lubbock County who performed an autopsy on Barraz, testified that Barraz had six separate blunt force injury wounds to her head that were consistent with being struck by a claw hammer. Groben concluded that Barraz's death was caused by blunt force trauma to the head but also noted that there was evidence of strangulation.[4] He further concluded that Barraz was alive both when she was strangled and beaten. Groben also determined from his examination of Barraz that she had been sexually assaulted at or near the time of death. Based on his observation of a crime scene photograph at Leal's Restaurant, Groben testified that while it appeared that Barraz was initially injured in

---

3. Flores testified that the frequency of this particular DNA in the current world population was "one in less than 5.7 billion."

4. Barraz wore a necktie as a part of her waitress outfit. Groben stated that "in addition to being hit in the head, somebody had strangled her, either using her tie, which is most likely, or using their hands."

the restaurant parking lot, there was not enough blood in the parking lot to suggest that she died there. Because of this, Groben concluded that Barraz was still alive and bleeding in the car "at some point in time."

■ In his second point of error, appellant argues that the evidence was legally insufficient to support his capital murder conviction because the State failed to prove that he committed the underlying offense of kidnapping. In evaluating the legal sufficiency of the evidence, we must view the evidence in the light most favorable to the verdict and determine whether any rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt. *See Jackson v. Virginia*, 443 U.S. 307, 319, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979).

■ Here, the State was required to prove that appellant murdered Barraz in the course of committing or attempting to commit kidnapping. TEX. PENAL CODE ANN. § 19.03(a)(2). A person commits the offense of kidnapping when he knowingly or intentionally abducts another person. TEX. PENAL CODE ANN. § 20.03(a). "Abduct" means to restrain a person with the intent to prevent her liberation by either: (1) secreting or holding her in a place where she is not likely to be found, or (2) using or threatening to use deadly force. TEX. PENAL CODE ANN. § 20.01(2). "Restrain" means to restrict a person's movements without consent, so as to interfere substantially with her liberty, by moving her from one place to another or by confining her. TEX. PENAL CODE ANN. § 20.01(1).

Appellant contends that "any restraint of [Barraz] was 'part and parcel' of, and inseparable from the murder." Thus, he argues, that because the restraint of Barraz "merged" into the murder, it cannot be said that the murder was "in the course of committing or attempting to commit" kidnapping. Appellant relies on the Fourteenth Court of Appeals' opinion in *Hines v. State*, 40 S.W.3d 705 (Tex.App.Houston [14th Dist.] 2001) for support. *Hines*, however, has since been reversed. *See Hines v. State*, 75 S.W.3d 444 (Tex.Crim. App.2002).

*Hines* involved a conviction for aggravated kidnapping. On direct appeal to the Fourteenth Court the appellant argued that the evidence was legally insufficient to support the verdict. Specifically, the appellant argued that the evidence presented at his trial was insufficient to establish that an abduction had occurred. Identifying the operative word in the definition of "abduct" as "restrain," the Fourteenth Court explained that in order to resolve the appellant's point of error, it would have to determine the meaning of the word "restrain." *Hines*, 40 S.W.3d at 709. In order to do this, the Fourteenth Court determined that it would first have to decide the level of conduct necessary to constitute substantial interference. *Id.* The Fourteenth Court concluded that substantial interference under section 20.01(1) of the Texas Penal Code "requires more than temporary confinement or slight movement which is part and parcel of the commission or attempted commission of another substantive criminal offense." *Id.* at 713–14.

On discretionary review, we reversed the decision of the Fourteenth Court. We held that it erred in concluding that to "interfere substantially" requires more than temporary confinement or slight movement that is part and parcel of the commission of another substantive offense. *Hines*, 75 S.W.3d at 447. We further concluded that nothing in the kidnapping statute requires the State to prove that a defendant moved a victim a certain distance or held him for a specific length of time before he can be found guilty of

kidnapping. *Id.* We further held that there is "no per se bar to a kidnapping prosecution for conduct that occurs during the commission of another offense." *Id.* at 448. Rather, we explained that the factfinder should look at all of the circumstances surrounding an offense in order to determine whether it meets the statutory definition of a kidnapping. *Id.* Accordingly, we will examine the facts of appellant's case in order to determine whether the evidence presented at trial established that appellant kidnapped Barraz.

Viewed in the light most favorable to the verdict, the evidence presented at trial shows that Barraz was initially assaulted in the parking lot of Leal's Restaurant. Jaramillo testified that Barraz left work before she had on the night of March 11, 1998. When Jaramillo arrived in the parking lot approximately twenty minutes later, Barraz's car was no longer there. The evidence at trial further supported a conclusion that Barraz did not die in the parking lot and that she was alive at some point while she was in the Mitsubishi. Moreover, Groben testified that based on his examination of Barraz, she had been assaulted three different ways, two of which occurred while she was still alive, and one that occurred at or near the time of death. Thus, we conclude that a rational jury could have found beyond a reasonable doubt that appellant murdered Barraz in the course of committing a kidnapping. Appellant's point of error two is overruled.

■ In his first point of error, appellant challenges the constitutionality of the Texas capital sentencing scheme. Specifically, appellant contends that since the kidnapping portion of section 19.03(a)(2) of the Texas Penal Code fails to sufficiently narrow the class of death eligible cases and defendants, imposition of the death penalty based upon that statute violates the Eighth and Fourteenth Amendments to the United States Constitution. *See Zant v. Stephens,* 462 U.S. 862, 877, 103 S.Ct. 2733, 77 L.Ed.2d 235 (1983).

In *Jurek v. Texas,* 428 U.S. 262, 276, 96 S.Ct. 2950, 49 L.Ed.2d 929 (1976), the United State Supreme Court held that the Texas capital murder scheme sufficiently narrows the class of death-eligible defendants. Thus, appellant's general challenge to the constitutionality of the Texas capital sentencing scheme fails.

■ Appellant further argues that the capital sentencing scheme is unconstitutional as applied to him. Specifically, he argues that because the facts in this case involve a restraint that is part and parcel of the murder, the imposition of death for a crime of murder in the course of kidnapping results in a violation of the Eighth and Fourteenth Amendments of the United States Constitution. For the reasons set out in point of error two and in *Jurek,* 428 U.S. at 276, 96 S.Ct. 2950, we find appellant's argument to be unpersuasive. Appellant's point of error one is overruled.

In point of error three, appellant contends that the trial court erred in admitting Barraz's written statement into evidence.

■ On February 26, 1998, approximately two weeks before she was murdered, Barraz went to the Muleshoe Police Department to report a robbery. She provided a written statement to Sergeant Joe Orozco in which she not only described the circumstances surrounding the robbery, but she recounted the problems that she had recently been having with appellant:

On February 13, 1998 Gilbert Reyes got into my car at Town and Country East, and stole my jacket. The clerk at Town and County [sic], my friend, Melissa Morales and I saw Gilbert take it. I told him to get out of my car. I got into my car and he took my jacket and got

out of my car. On February 22, 1998 someone broke into my house. There was a lot of valuable stuff in the house that was not taken. My bed was messed up, and they had gone through my underwear drawer. All the screens in the house were torn. Only a few were not touched. The window in my room was unlocked and the blinds were messed up. Also one of the blinds was messed up in the livingroom. On February 23, 1998 I was with my brother and some friends in my friends [sic] car and Gilbert Reyes kept following us and was flashing us with his headlights. He also kept showing up everywhere we went. Then I came to the Police Department and spoke with Officer Benny Parker. Gilbert Reyes keeps driving by my residence and any place that I happen to be at. This has been going on for several weeks. I am afraid of Gilbert Reyes.

During the punishment phase of the trial, the State called Orozco to testify about the contents of the report. Orozco testified without objection about all three incidents of which Barraz complained in her written statement. The State then sought to introduce Exhibit 66, which consists of Barraz's statement and Orozco's offense report, into evidence. Appellant made a hearsay objection and the trial court overruled appellant's objection.

■ Appellant now argues that the trial court erred in allowing the State to introduce Barraz's written hearsay statement into evidence. However, a defendant who allows evidence to be introduced from one source without objection forfeits any subsequent complaints about the introduction of the same evidence from another source. *See Stoker v. State,* 788 S.W.2d 1, 12 (Tex. Crim.App.1989), *cert. denied,* 498 U.S. 951, 111 S.Ct. 371, 112 L.Ed.2d 333 (1990); *see also Moore v. State,* 999 S.W.2d 385, 402 (Tex.Crim.App.1999), *cert. denied,* 530 U.S. 1216, 120 S.Ct. 2220, 147 L.Ed.2d 252 (2000) (explaining that the admission of the same evidence from another source without objection forfeits previously stated complaints). In the present case we find that the contents of Barraz's statement had already been made known to the jury through the testimony of Orozco. Thus, even if the State's exhibit was hearsay, any error was not preserved because the same substantive evidence was elsewhere introduced without objection. Appellant's point of error three is overruled.

■ Appellant alleges in his fourth point of error that the trial court denied him due process of law by preventing him from presenting mitigating evidence at his trial.[5] At the punishment phase of his trial, appellant called Dr. Walter Quijano, a psychologist, to give his expert opinion on appellant's risk of future dangerousness. During direct examination of Quijano, defense counsel asked Quijano to tell the jury what he considered to be mitigating factors in appellant's case. The State objected and the trial court sustained the objection. Appellant presented a bill of exception outside the presence of the jury to show that Quijano would have testified that there were three mitigating factors: "the dependent relationship that developed between the defendant and the victim"; "the history of alcoholism"; and "a stable work history."

Appellant argues that, because the trial court sustained the State's objection to Quijano's testimony, the jury was prevented from considering the mitigating evidence in violation of the Eighth and Fourteenth Amendments to the United States

---

5. Specifically, appellant alleges that "[t]he trial court denied [him] due process of law by erroneously excluding testimony offered in mitigation of sentence."

Constitution. *See Jurek v. Texas,* 428 U.S. 262, 96 S.Ct. 2950, 49 L.Ed.2d 929 (1976). We find appellant's argument to be without merit.

All of the evidence that was presented in appellant's bill of exception was also presented to the jury. Quijano testified about appellant's dependency in his relationship with Barraz, his alcoholism, and his stable employment history. The only thing that Quijano could not do was tell the jury that he considered all of these factors to be mitigating. Moreover, other defense witnesses at the punishment hearing testified that appellant was a hard worker who supported his family after his father had died and that Barraz was mentally and physically abusive toward appellant while they were dating. The fact that Quijano was prevented from giving an opinion as to whether this evidence should be considered mitigating does not mean that the jury was prevented from considering and giving effect to this evidence in their determination of the mitigation special issue. Appellant's point of error four is overruled.

We affirm the judgment of the trial court.

PRICE and KEASLER, JJ., concurred.