Death Opinion






 








IN THE COURT OF CRIMINAL APPEALS


OF TEXAS






No. AP-74,594






TARUS VANDELL SALES, Appellant



v.



THE STATE OF TEXAS





ON DIRECT APPEAL


CAUSE NO. 893161 FROM THE 179
th DISTRICT COURT


HARRIS COUNTY






 Johnson, J., delivered the unanimous opinion of the Court.


O P I N I O N



 Appellant was convicted in February 2003 of capital murder, alleged to have been committed
in the course of committing and attempting to commit retaliation against the decedent. (1) Tex. Penal
Code Ann. § 19.03(a)(2). Pursuant to the jury's answers to the special issues set forth in Texas
Code of Criminal Procedure Article 37.071, Sections 2(b) and 2(e), the trial judge sentenced
appellant to death. Art. 37.071 § 2(g). (2) Direct appeal to this Court is automatic. Art. 37.071 § 2(h). 
Appellant raises eleven points of error. We affirm.

 In his first point of error, appellant claims that the trial court erred in ruling that appellant's
expert witness could not give her expert opinion as to what she believed was mitigation evidence in
appellant's case.

 During the punishment phase of the trial, appellant called Jessica Harris as an expert witness. 
Harris testified that she researched appellant's background, his upbringing, his schooling, and his
family by conducting numerous interviews and collecting "every piece of paper, every record"
relating to appellant. Outside the presence of the jury, appellant argued that he should be allowed
to question Harris specifically about what evidence she considered to be mitigation evidence in
appellant's case: (3)

 [Defense counsel]: Judge, what I'd like to ask her is, given the research she's done,
the investigation that she's done, and the review of the records that she's been able
to obtain and review, what she believes is mitigation in his case.


 THE COURT: What she thinks is mitigation?


 [Defense counsel]: That's right. She's an expert, and she's a mitigation expert. And
who better than a mitigation expert is better to answer that question?


The state objected that such testimony would invade the province of the jury. The trial court
sustained the state's objection.

 Despite the court's ruling, during appellant's redirect examination of Harris, Harris answered
the following questions, all without objection from the state:

 Do you consider the fact that [appellant] grew up in the projects - do you consider
that mitigation?


 Do you consider the fact that [appellant] didn't have a father at home - do you
consider that mitigation?


 What about the fact that he had a mother who was a gambling addict and left him at
home?


 [Y]our records indicate that [appellant] had a learning disability[.] . . . Do you
consider that a mitigating factor?


 Do you think the fact that [appellant] grew up in the projects, an unsuitable
environment - do you think that's mitigation?


Harris also testified that appellant's "role models, coupled with his lack of supervision, coupled with
a horrible neighborhood" were mitigating factors.

 Appellant sought to ask Harris "what she believes is mitigation in his case." Despite the trial
court's ruling to the contrary, appellant elicited considerable testimony from Harris concerning
factors and evidence she viewed as mitigating in appellant's case. Thus, appellant was able to elicit
the same or substantially similar testimony that he complains about on appeal. See Reyes v. State,
84 S.W.3d 633, 638-39 (Tex. Crim. App. 2002). Point of error one is overruled.

 In point of error two, appellant claims the trial court erred in denying a challenge for cause
on the grounds that a prospective juror, Teresa Beck Simms, would not consider mitigating evidence. 
During individual voir dire appellant challenged Simms on the grounds that she "will not give any
consideration or value to any mitigating evidence." Appellant points to the following exchange as
justification for his challenge against Simms:

 [Defense counsel]: Bottom line is, you're really not going to give [the defendant's
background] any consideration or value if you found the person guilty of capital
murder?


 [Simms]: That's right.


He argues that Simms was challengeable for cause because she would not give weight or value to
appellant's background during punishment deliberations.

 There was more to the voir dire of Simms by defense counsel, however. The exchange about
which appellant complains was preceded by the following exchange.

 Q. (Defense counsel) Well, what are all the different factors that you take consideration?


 A. Like I said, the severity of the crime, like if someone murdered 20 people compared to
1. Also the age, maybe just, you know, just basically what the difference is in the severity
of the crime.


 Q. What, if any, role would a person's background have in helping you answer that question?

 

 A. I would listen to the background. I don't know if I would take it too much into account,
because I think you're ultimately responsible for your own actions, personal responsibility.


 Q. You would have found the person responsible when you found them guilty of capital
murder. In other words, you found the person specifically intended to case somebody's
death; and then you held then responsible by finding them guilty, correct?


 A. Yes, sir.


 Q. So, at that point, are you indicating that a person's background has no value at all to you
really in determining -


 A. Basically, yes.


 Q. - the life and death?


 A. I guess that would be correct, sir.


 Q. And you would never really give it any weight in answering these questions?


 A. I'm not - well, from that answer it sounds like I wouldn't, but it would be in the back of
my mind and I would think about it. But I guess the ultimate answer would be -


 Q. No?


 A. - no.


 Q. Okay. So, you wouldn't really give it any consideration or value?

 

 A. Not much, because you're in control of yourself.

 After Simms was excused for the day, appellant challenged her for cause, and the trial court
overruled the challenge.

 [DEFENSE]: Judge, we'd make a challenge for cause with regard to Teresa Simms for the
reason she indicated once she had found an individual guilty of capital murder and she holds
that person responsible, she will not give any consideration or value to any mitigating
evidence, the very issue in Question Number Three.


 THE COURT: Excuse me. She said as to family.


 [DEFENSE]: My question had to do with the background of an individual. And Question
Number Three talks about character and background. And she specifically indicated she
wouldn't give it any weight once she has found the person guilty of capital murder. So, I
would make a challenge.


 THE COURT: She also said it was in the back of her mind, and she probably wouldn't give
it too much weight and she would consider it. That challenge is denied.


 While jurors may not be precluded or prohibited from considering any relevant evidence
offered in mitigation of punishment, they are not required to assign any amount of weight to any
particular evidence offered in mitigation. Morrow v. State, 910 S.W.2d 471, 472-73 (Tex. Crim.
App. 1995), cert. denied, 517 U.S. 1192 (1996). This means that the factfinder must be allowed to
hear the evidence and act upon it. Id. Therefore, jurors may assign to evidence offered in mitigation
any weight they individually deem appropriate in answering the punishment issues. "The amount
of weight that the particular factfinder might give any particular piece of evidence is left to 'the range
of judgment and discretion' exercised by each juror." Id. at 472 (citations omitted). We have
repeatedly rejected the notion that certain types of evidence are mitigating as a matter of law. 
Williams v. State, 937 S.W.2d 479, 490-91 (Tex. Crim. App. 1996). So long as jurors are not
foreclosed from considering and giving effect to evidence they view as mitigating, they are not
required to view any certain evidence as mitigating or not. Therefore, "[v]eniremembers are not
challengeable for their particular views about particular evidence." Morrow, 910 S.W.2d at 473.

 Although Simms was required to consider all the evidence, she was not required to view any
specific part of the evidence as mitigating. In response to questioning by defense counsel, she said
that the evidence concerning appellant's background "would be in the back of my mind and I would
think about it." Accordingly, the trial court did not abuse its discretion in overruling appellant's
challenge for cause against Simms on the ground that Simms did not believe certain evidence was
mitigating. Point of error two is overruled.

 In point of error four, appellant claims the trial court erred in overruling his challenge for
cause against prospective juror Donald E. Noble on the grounds that he would not afford appellant
a presumption of innocence. Responding to questions from appellant's attorney, Noble agreed that
if the prosecution has gone to the trouble of bringing someone to trial, then the person is probably
guilty. He also agreed that he would therefore probably lean toward the state and view the defendant 
as guilty before any evidence had been presented. The judge then explained the law regarding the
presumption of innocence and asked Noble these questions:

 THE COURT: . . . So, my question is, insofar as [appellant] is concerned at the
present, the law says he is presumed to be innocent, meaning he's not guilty. . . . How
do you feel?


 [Noble]: I guess I really feel that they have to prove it and I would be open, that they
would have to prove it.


 THE COURT: That the State would have to prove he's guilty or that he would have
to prove he's not guilty?


 A. State would have to prove it.


Appellant's attorney resumed questioning Noble and told him if he thought appellant was guilty
"even just a little bit," to say so. Noble responded that "[i]t would depend on the case itself and the
evidence produced."

 Based on Noble's voir dire as a whole, and especially his responses after the law was
explained to him, the trial court did not abuse its discretion in denying appellant's challenge on the
grounds that Noble would not afford appellant the presumption of innocence. See Heiselbetz v.
State, 906 S.W.2d 500, 510-11 (Tex. Crim. App. 1995)( denial of challenges for cause not abuse of
discretion as to prospective jurors who were rehabilitated after law was explained to them). Point
of error four is overruled.

 In his third point of error, appellant claims that the trial court erred in denying a challenge
for cause on the grounds that the prospective juror would always answer special issue two, the
parties issue, affirmatively upon a finding of guilty of capital murder. We need not address the
merits of this claim because appellant cannot show he was harmed.

 Harm from the erroneous denial of a defense challenge for cause occurs (1) when a
defendant exercises a peremptory challenge on a veniremember whom the trial court
erroneously failed to excuse for cause at the defendant's request, (2) the defendant
uses all of his statutorily allotted peremptory challenges, and (3) the defendant was
denied a request for an additional peremptory challenge which he claims he would
use on another veniremember whom the defendant identifies as "objectionable" and
who actually sits on the jury.


Escamilla v. State, 143 S.W.3d 814, 821 (Tex. Crim. App. 2004).

 A defendant has been harmed in these circumstances because he was erroneously deprived
of one of his statutory peremptory challenges when forced to use it to remove a prospective juror 
he should have been allowed to remove for cause. Id. "When these conditions are met and a
defendant has been granted additional peremptory challenges, he must also show that the trial court
erroneously denied a number of defense challenges for cause equal to at least one more than the
additional peremptory challenges in order to show that he was wrongfully 'deprived' of 'the use of
at least one of his allotted peremptory challenges.'" Id. Thus, if a defendant was given three
additional peremptory challenges, he then needs to show that the trial court erroneously denied his
challenges for cause to at least four prospective jurors. Id.

 Here, appellant exercised peremptory strikes to remove Simms (point of error two) and Noble
(point of error four) after his challenges for cause were denied. He was granted one additional
peremptory challenge, so he needs to show the trial court wrongfully denied his challenges for cause
to at least two prospective jurors . We have already established that the trial court did not abuse its
discretion in denying appellant's challenges for cause against Simms and Noble. Given that this
point of error presents the only other complaint presented concerning challenges for cause, appellant
has failed to show harm. Point of error three is overruled.

 In his fifth point of error, appellant claims that the trial court erred in overruling his hearsay
objection to Sergeant Eric Mehl's testimony about a phone call received by the victim, Tyron Butler,
before his death. Mehl testified that he was the officer assigned to investigate Butler's homicide. 
Mehl stated that, based on information that he had received from another source, he searched for
Butler's name in the Houston Police Department's data base to determine if Butler was shown as a
complainant, a witness, or a reportee (4) in any cases. A bench conference then took place at which
the prosecutor argued for the admission of Mehl's testimony that the police received information that
Butler had received a telephone call two days before his murder warning him that there "was a hit
out on him." This information had led Mehl to run the computer search on Butler's name. The
prosecutor explained that Mehl acted "in reliance upon that tip, that clue, that phone call he received,
[and that it] caused him to start the investigation down this path" and stated, "All I'm trying to do
right now is get in that this tip is what caused [Mehl] to go down this path and that's what he's acting
in reliance upon, that information." Appellant objected on the basis of hearsay.

 The trial court agreed with appellant that the testimony was hearsay, but, after further
discussion, essentially told the state to leave testimony about the existence of a warning call until
Nikita Seaton, who had personal information about the call, testified. (5) The trial court then overruled
the hearsay objection without stating a basis for the ruling. (6) 

 The state strove to follow the trial court's ruling, interrupting Mehl when he spoke too
specifically.

 Q. Sergeant Mehl, what was the information, in a broad term, I'm asking you this question,
that caused you to go to your H.P.D. computer?


 A. Mr. Butler received a call at his place of employment warning him that if he -


 Q. When did that call happen?


 Mehl went on to explain that, because of this information, he searched the data base and
pulled every case in which Butler had been a witness, a complainant, or a reportee. Based on the
computer results, appellant became a suspect.

 Hearsay "is a statement, other than one made by the declarant while testifying at the trial or
hearing, offered in evidence to prove the truth of the matter asserted." Tex. R. Evid. 801(d). A
statement which is not offered for the truth of the matter asserted, but for some other reason, is not
hearsay. Guidry v. State, 9 S.W.3d 133, 152 (Tex. Crim. App. 1999), cert. denied, 531 U.S. 837
(2000); Dinkins v. State, 894 S.W.2d 330, 347 (Tex. Crim. App.), cert. denied, 516 U.S. 832 (1995). 
In Dinkins v. State, supra at 347, we held that an appointment book and an application form were
not inadmissible hearsay because they were offered simply to show how the defendant became a
suspect in the investigation. Likewise, in Jones v. State, (7) we held that a statement was not
objectionable as hearsay because it was not offered to prove the truth of the matter asserted; it was
offered to show why the officer got an arrest warrant for the defendant and arrested him.

 Mehl's testimony about the phone call received by Butler was offered to explain why the
police were prompted to run Butler's name through the computer system, an action that ultimately
led to appellant as a suspect. The content of the telephone conversation was not revealed Appellant's
objection was properly overruled. Point of error five is overruled.

 In point of error six, appellant claims that the trial court erred by overruling his hearsay
objection to Mehl's testimony concerning information generated from the computer search on
Butler's name. Mehl testified that seven offense reports came up when they ran a computer search
using Butler's name. Of those, they ultimately focused on one offense report. Appellant objected
to testimony about the report, based on hearsay. The objection was overruled. In narrowing the
reports down to the one against appellant, Mehl testified that he ran a search to determine which
male suspects were in custody at the time of Butler's death and which cases were still pending which
would require testimony from a witness. The case against appellant was the only one still pending.
The report reflected that appellant and two others were arrested for a deadly-conduct offense. The
case against appellant was set for trial on August 14, 2000. Butler, a witness in the case, was killed
on July 21, 2000.

 The testimony regarding the report was not offered for its truth (that appellant committed the
offense stated therein), but to explain how appellant came to be a suspect in the instant case, and to 
set out a motive appellant might have had for murdering Butler. Guidry, 9 S.W.3d at 152; Dinkins,
894 S.W.2d at 347. Therefore, the testimony was not hearsay. The trial court did not err in
overruling appellant's hearsay objection. Point of error six is overruled.

 In his seventh point of error, appellant claims that the trial court erred in overruling his
hearsay objections to testimony concerning a phone call to Butler. Nikita Seaton testified that she
was Butler's co-worker at Sharpstown Mall. Seaton was a concierge at the mall, and Butler worked
in mall security. Seaton, an African-American female, testified that on July 18, 2000, while at work,
she received a phone call from someone who sounded like a young black male. She testified that
the caller asked to speak to "T-Bone," which Seaton knew was a nickname for Butler, so she called 

 Butler to the phone. The call lasted less than a minute, and when he hung up, Butler discussed the
call with Seaton. (8) After Butler's murder, Seaton told the police about the call.

 Appellant's hearsay objections were directed to two portions of Seaton's testimony: (1) her
description of the caller as a young, black male, and (2) her testimony that the caller asked to talk
to Butler. Seaton's description of what the caller might have looked like was not hearsay. Seaton
did not refer to a statement made by someone else, but rather simply stated her own perceptions of
the caller's characteristics based upon the sound of his voice. Thus, since Seaton was simply
testifying as to her own auditory perceptions, there was no hearsay in that portion of her testimony. 
Her testimony about the caller's request to speak with Butler was not presented for the truth of the
matter asserted, but to explain why she called Butler to the telephone, and is therefore not hearsay.
See, Dinkins, supra, 894 S.W.2d at 347 (explaining that "[a]n extrajudicial statement ... which is
offered for the purpose of showing what was said rather than for the truth of the matter stated therein
does not constitute hearsay." (emphasis in original)). Point of error seven is overruled.

 In point of error eight, appellant claims that the trial court erred at the guilt phase of trial 
when it overruled his objection to extraneous-offense testimony by Martinez Hardnett. Hardnett and
appellant were cellmates at the Harris County Jail for a few months. Appellant told Hardnett that
he was charged with killing a security guard. He also told Hardnett that he wanted to be released
so that he could get some money together in order to hire a lawyer for the shooter in his case. 
Appellant had heard that the shooter had been arrested, and appellant was worried that the shooter
would "give him up" or tell the police "what actually happened." Appellant and Hardnett, a drug
dealer, discussed a possible business arrangement between Hardnett and the shooter that would allow
the shooter to earn some money. Hardnett agreed to pay the shooter to "cook" some cocaine for
Hardnett. Appellant objected to Hardnett's testimony about his discussions with appellant regarding
the potential business arrangement between the shooter and Hardnett.

 Appellant contends the testimony was inadmissible extraneous offense evidence under Rule
of Evidence 404(b). Rule 404(b) provides that

 [e]vidence of other crimes, wrongs, or acts is not admissible to prove the character
of a person in order to show that he acted in conformity therewith. It may, however,
be admissible for other purposes, such as proof of motive, opportunity, intent,
preparation, plan, knowledge, identity, or absence of mistake or accident....


Criminal acts designed to reduce the likelihood of prosecution, conviction, or incarceration for the
offense on trial have been held admissible under Rule 404(b) as demonstrating "consciousness of
guilt." Ransom v. State, 920 S.W.2d 288, 299 (Tex. Crim. App.)(op. on reh'g.), cert. denied, 519
U.S. 1030 (1996). These have included threats against the prosecutor, threats against witnesses and
their families, physical violence against witnesses, escape from confinement, bail jumping, and 
presentation of fake identification to the police. Id. (cases cited therein). Evidence of a plan to
provide money to a co-actor through illegal means for purposes of hiring a lawyer for that co-actor,
all in an effort to prevent the co-actor from informing the police of appellant's involvement would
fall within this category. The testimony was therefore admissible to show appellant's consciousness
of guilt. The trial court did not abuse its discretion in overruling appellant's objection. Point of error
eight is overruled.

 In his ninth point of error, appellant claims that the trial court erred by overruling his
objection to extraneous-offense evidence regarding witness tampering. Hardnett testified that
appellant told him that he told his girlfriend to "take the witnesses out, treat them nice so they
wouldn't testify" against him.

 As before, this testimony was admissible to show appellant's consciousness of guilt. The
trial court did not abuse its discretion in allowing the testimony. Point of error nine is overruled.

 In point of error ten, appellant claims that the trial court erred at the punishment phase of trial
when it denied his motion to exclude evidence of appellant's involvement in an unadjudicated
murder. At trial, appellant objected to the admission of the extraneous-offense evidence because it
"has not resulted in a conviction" and was not even being prosecuted, and also stated the evidence
was objectionable on the basis of Article 37.07(1) and Article 37.02(2)(a)(1), Rules of Evidence 401,
402, 403, 404, 609, 802 and 805, Article I, sections 3, 9, 10, 13, and 15 of the Texas Constitution,
and the Fourth, Fifth, Sixth, Eighth, and Fourteenth Amendments to the United States Constitution. 
Appellant argues on appeal that the evidence should not have been admitted because the state did
not clearly prove that appellant was the perpetrator.

 Appellant has not preserved this claim for review. Tex. R. App. P. 33.1. While he cited
numerous provisions in his umbrella trial objection, he did not articulate the argument he now asserts
on appeal, that the state did not clearly prove that appellant was the perpetrator, and it is not apparent
from the trial court's ruling or any of the discussion at trial that the trial court or parties understood
his objection to encompass the specific argument he now makes. The complaint on appeal differs
from the complaint at trial. Burks v. State, 876 S.W.2d 877, 908 (Tex. Crim. App. 1994), cert.
denied, 513 U.S. 1114 (1995)(arguing at trial that extraneous offenses must be proven beyond a
reasonable doubt does not preserve complaint on appeal that extraneous offense should not have
been admitted because charges were dropped). Point of error ten is overruled.

 In point of error eleven, appellant claims that the trial court erred by denying his motion to
hold Article 37.071, Sections (2)(e) and (2)(f) unconstitutional as a violation of the due course of law
provision of Article 1, Section 19 of the Texas Constitution. Appellant argues that the article
unconstitutionally places on the defendant the burden to produce mitigating evidence sufficient to
convince the jury that a life sentence rather than a death sentence should be imposed. We have
rejected such a claim under both the federal and Texas constitutions. Escamilla, supra, 143 S.W.3d
at 828. Point of error eleven is overruled.

 The judgment of the trial court is affirmed.

 Johnson, J.

En banc

Delivered: January 26, 2005

Do not publish
1. The jury charge included instructions on party culpability. The jury charge also authorized conviction of
several other offenses, specifically retaliation, solicitation to commit murder, murder, and solicitation to commit capital
murder. The jury found appellant guilty only of capital murder as alleged in the indictment.
2. Unless otherwise indicated, all references to Articles refer to the Texas Code of Criminal Procedure.
3. Harris explained her view of "mitigation" as:


 Mitigation, simply stated, is just taking an individual and trying to uncover all the information about
their life, from birth to the present.


She further explained that mitigation is "an explanation[,] [i]t's providing information."
4. Mehl defined "reportee" as the person who called the police.
5. "Before you get Ms. Seaton, you don't even need to put that in, I received information from her regarding
a phone call he had received. So, we're running his name. I mean, up until the point you get Ms. Seaton, I don't see
this as a problem anyway."
6. Mehl had also spoken with Daniel Steven Fleary, who told Mehl that he was the person who had called the
victim to warn him about a hit being out on him. The state was unable to locate Fleary at the time of trial. 
7. 843 S.W.2d 487, 499 (Tex. Crim. App. 1992), cert. denied, 507 U.S. 1035 (1993), overruled on other grounds
by Maxwell v. State, 48 S.W.3d 196 (Tex. Crim. App. 2001).
8. Seaton did not testify as to the content of that conversation.