Daudi Hashim Huff v. State

COURT OF APPEALS

SECOND DISTRICT OF TEXAS

FORT WORTH

NO. 2-04-245-CR

DAUDI HASHIM HUFF 

A/K/A DAUDI H. HUFF APPELLANT

V.

THE STATE OF TEXAS STATE

------------

FROM THE 372ND DISTRICT COURT OF TARRANT COUNTY

------------

MEMORANDUM OPINION
(footnote: 1)

------------

I.  Introduction

A jury convicted Appellant Daudi Hashim Huff of aggravated robbery and assessed his punishment at twenty years’ confinement.  In four points, Huff argues that the evidence is legally and factually insufficient to support his conviction and that the trial court erred by admitting a jail document showing Huff’s request for a copy of the Holy Koran and by denying Huff’s request for a mistrial.  We will affirm.

II.  Factual Background

Clarence Johnson, Jr. was at his apartment on the afternoon of August 4, 2001 when someone knocked on the door.  Johnson answered the door, and a man later identified by Johnson as Huff explained that he was looking for someone.  Johnson responded that the person Huff was looking for probably did not live in the area, and Huff left. 

A few hours later, Huff again appeared at Johnson’s door.  Johnson began to open the door, but it was kicked in, and Huff and another man, Malik Bunch, entered the apartment.  Huff brandished a .357 revolver and Bunch carried a knife.  Huff pointed the pistol at Johnson and ordered him to “sit your punk ass down, nigger.”  Johnson, surprised, sat down and asked what this was about; he asked the intruders if they were sure they had the right apartment.  Bunch began to remove items from Johnson’s apartment, including a television, telephone, and a fur coat.  Huff later asked Johnson questions concerning his ex-wife and about specific items of property while he simultaneously spoke on a cell phone. 

Sometime later, Bunch exited Johnson’s apartment and returned with Ephraim Wilson.  Johnson recognized Wilson as his ex-wife’s lover and the individual with whom she had a child during their marriage.  Johnson asked the man if his name was Ephraim, but Wilson claimed to be Ephraim’s uncle. Johnson asked Wilson what this was about, and Wilson responded, “[N]igger, you know what this shit is about.”  Wilson held a knife to Johnson’s throat and accused him of kicking his ex-wife in the stomach while she was pregnant with Ephraim’s baby.  Wilson and Bunch then left, but Huff remained in the apartment with Johnson. 

Johnson asked Huff if he was going to kill him, and Huff responded, “[N]igger, make your peace with God.  Say your prayers.”  Johnson dropped to his knees, held his hands out, closed his eyes, and prayed.  Huff then instructed Johnson to stand up and to repeat after him.  Huff apparently began to say something in Arabic; Johnson turned around and saw Huff cover the pistol with a pillow and point it at him.  Huff fired, and Johnson was shot in the face. Johnson managed to run downstairs and knock on his neighbor’s door.  The neighbor answered his door, pulled Johnson in, locked the door, retrieved his pistol, and called 911.  Police and paramedics arrived shortly thereafter and transported Johnson, who survived, to the hospital. 

Huff, Wilson, and Bunch were all subsequently arrested.  Huff was apprehended in Du Page County, Illinois and extradited to Texas. 

At trial, Huff testified that he did not intend to rob Johnson.  He claimed that he, Wilson, and Bunch went to Johnson’s apartment to retrieve items belonging to Johnson’s ex-wife.  Huff insisted that the television set and telephone belonged to Johnson’s ex-wife and that he did not take Johnson’s fur coat.  Huff testified that he brought the pistol along for protection and that he did not intend to shoot Johnson.  Huff further suggested that the pistol “went off” when he jumped back in response to Johnson’s sudden movement and that he held the pillow up over the pistol in order to scare Johnson. 

A jury convicted Huff of aggravated robbery and assessed his punishment at twenty years’ confinement.  This appeal followed.

III.  Legal and Factual Sufficiency of the Evidence

In his first point, Huff argues that the evidence is legally and factually insufficient.  Specifically, Huff contends that the evidence fails to show that he deprived Johnson of property that belonged to Johnson, as opposed to Johnson’s ex-wife, and that, therefore, “no rational jury could have found that appellant assaulted Clarence Johnson 
in the course of committing theft
.”
(footnote: 2)  The State maintains that the evidence is legally and factually sufficient to support the verdict.

In reviewing the legal sufficiency of the evidence to support a conviction, we view all the evidence in the light most favorable to 
the verdict in order to determine whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.  
Jackson v. Virginia
, 443 U.S. 307, 319, 99 S. Ct. 2781, 2789 (1979); 
Ross v. State
, 133 S.W.3d 618, 620 (Tex. Crim. App. 2004).  
This standard gives full play to the responsibility of the trier of fact to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts.  
Jackson
, 443 U.S. at 319, 99 S. Ct. at 2789.  The trier of fact is the sole judge of the weight and credibility of the evidence.  
See
 Tex. Code Crim. Proc. Ann.
 art. 38.04 (Vernon 1979); 
Margraves v. State
, 34 S.W.3d 912, 919 (Tex. Crim. App. 2000).  Thus, when performing a legal sufficiency review, we may not re-evaluate the weight and credibility of the evidence and substitute our judgment for that of the fact finder.  
Dewberry v. State
, 4 S.W.3d 735, 740 (Tex. Crim. App. 1999), 
cert. denied
, 529 U.S. 1131 (2000).  We must resolve any inconsistencies in the evidence in favor of the verdict.  
Curry v. State
, 30 S.W.3d 394, 406 (Tex. Crim. App. 2000).

In contrast, when
 reviewing the factual sufficiency of the evidence to support a conviction, we are to view all the evidence in a neutral light, favoring neither party.  
See Zuniga v. State
, 144 S.W.3d 477, 481 (Tex. Crim. App. 2004).  The only question to be answered in a factual sufficiency review is whether, considering the evidence in a neutral light, the fact finder was rationally justified in finding guilt beyond a reasonable doubt.  
Id
. at 484.  There are two ways evidence may be factually insufficient:  (1) the evidence supporting the verdict or judgment, considered by itself, is too weak to support the finding of guilt beyond a reasonable doubt; or (2) when there is evidence both supporting and contradicting the verdict or judgment, weighing all the evidence, the contrary evidence is so strong that guilt cannot be proven beyond a reasonable doubt.  
Id
. at 484-85.  “This standard acknowledges that evidence of guilt can ‘preponderate’ in favor of conviction but still be insufficient to prove the elements of the crime beyond a reasonable doubt.”  
Id
. at 485.  In other words, evidence supporting a guilty finding can outweigh the contrary proof but still be insufficient to prove the elements of an offense beyond a reasonable doubt.  
Id
.   

In performing a factual sufficiency review, we are to give deference to the fact finder’s determinations, including determinations involving the credibility and demeanor of witnesses.  
Id.
 at 481; 
Cain v. State
, 958 S.W.2d 404, 407 (Tex. Crim. App. 1997).  We may not substitute our judgment for that of the fact finder’s.  
Zuniga, 
144 S.W.3d at 482.  

A proper factual sufficiency review requires an examination of all the evidence.  
Id
. at 484, 486-87.  An opinion addressing factual sufficiency must include a discussion of the most important and relevant evidence that supports the appellant’s complaint on appeal.  
Sims v. State
, 99 S.W.3d 600, 603 (Tex. Crim. App. 2003).

Section 29.02 of the Texas Penal Code defines robbery as follows: 

(a) A person commits an offense if, in the course of committing theft as defined in Chapter 31 and with intent to obtain or maintain control of the property, he: 

(1) intentionally, knowingly, or recklessly causes bodily injury to another; or

(2) intentionally or knowingly threatens or places another in fear of imminent bodily injury or death.

Tex. Penal Code Ann.
 § 29.02(a) (Vernon 2003).  A robbery becomes aggravated if the defendant commits a robbery as defined in section 29.02 and he “uses or exhibits a deadly weapon.”  
See id
. § 29.03(a)(2).  “‘In the course of committing theft’ means conduct that occurs in an attempt to commit, during the commission, or in immediate flight after the attempt or commission of theft.”  
See id
. § 29.01(1).  The evidence is sufficient to show ownership if it shows that the property was taken from the care, custody, and control of the complaining witness.  
Jones v. State
, 687 S.W.2d 430, 432 (Tex. App.—Houston [14th Dist.] 1985, no pet.).

In the present case, the indictment tracked the language found in the Penal Code by charging that Huff

did then and there intentionally or knowingly, while in the course of committing theft of property and with intent to obtain or maintain control of said property, threaten or place Clarence Johnson in fear of imminent bodily injury or death, and the defendant did then and there use or exhibit a deadly weapon, to-wit: a firearm[.]

The evidence demonstrates that Huff “cased” Johnson’s apartment by first approaching it and pretending to look for a non-existing person.  Upon discovering that Johnson did in fact reside at that particular apartment, Huff and Bunch forced their way inside; Bunch began to remove Johnson’s 
television, telephone, and fur coat while Huff pointed a .357 at Johnson.  Huff inquired about specific items of property purportedly in Johnson’s possession while simultaneously speaking on a cell phone.  One of Huff’s questions concerned an expensive piece of music equipment that Johnson owned but had previously pawned.  Huff carried the .357 during the entire robbery, and Johnson saw Huff cover the pistol with a pillow and point it at him. 
 Johnson testified that all the possessions at his apartment, including those taken, belonged to him and not to his ex-wife. 

Huff argues that his own testimony constituted contravening evidence of such a nature that the State failed to meet its burden with regard to the theft element of aggravated robbery.
(footnote: 3)  Huff testified that he, Wilson, and Bunch “took only items they thought belonged to Elizabeth.” 
 Huff further testified that he did not intend to rob Johnson and that he neither took a fur coat nor inquired about Johnson’s music equipment. 
 However, it is the responsibility of the trier of fact to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts.  
Jackson
, 443 U.S. at 319, 99 S. Ct. at 2789; 
Zuniga, 
144 S.W.3d at 481-82.
  The jury obviously 
chose to believe Johnson’s account of the events that day, and we may not substitute our judgment for that of the fact finder.  
Zuniga, 
144 S.W.3d at 482; 
Dewberry
, 4 S.W.3d at 740
.  

Viewing all the evidence in the light most favorable to 
the verdict, a rational trier of fact could have concluded beyond a reasonable doubt that Huff committed the offense of aggravated robbery.  
See Jackson
, 443 U.S. at 319, 99 S. Ct. at 2789; 
Ross
, 133 S.W.3d at 620.  Likewise, viewing the evidence in a neutral light, favoring neither party, the fact finder was rationally justified in finding guilt beyond a reasonable doubt
.  
See Zuniga
, 144 S.W.3d at 481, 484.  Accordingly, we hold that the evidence was legally and factually sufficient to establish the theft element of aggravated robbery and, ultimately, the offense of aggravated robbery.  We overrule Huff’s first and second points.

IV.  Admissibility of State’s Exhibit 18

In his third point, Huff argues that the trial court erred by admitting State’s Exhibit 18, a document showing Huff’s request for a copy of the  Koran.  Huff testified at the guilt/innocence stage of the trial, and on direct examination, Huff’s attorney inquired into Huff’s religious preference.  Huff responded, “I study a lot of things.  I study Christianity, read the Bible every day, old and new testaments.  I also study a little bit of the Koran.  I also study a little bit of buddhism and tallism [sic].”  Huff then denied knowing how to speak Arabic.

On cross-examination, counsel for the State asked if Huff had “a little bit greater interest in the Koran than just a passing interest.”  Huff answered, “None of my interests I don’t think are passive interests.”  He further stated, “I – I have read sections of the Koran just like I’ve read most of the Old Testament and all of the New Testament.”  Counsel for the State then asked Huff whether he had requested a copy of the Koran and an Islamic chaplain while in jail.  Huff responded affirmatively and later admitted that he was “familiar with Arabic terms.”  

On re-direct, Huff’s counsel asked, “As far as the Koran is concerned or the Bible or whatever, you’re not on trial for being a terrorist, are you, or anything like that.”  Huff answered, “I hope not.”  On re-cross-examination, Huff agreed that it is “definitely terrifying” to have someone invade your home, put a gun in your face, and fire a bullet in your head.  Counsel for the State then offered Exhibit 18, Huff’s counsel objected on relevance grounds, and the trial court overruled the objection “based on the state of the entire record concerning the same subject matter.” 

The law is well settled that a defendant forfeits complaints about the introduction of evidence when the same evidence is subsequently admitted from another source.  
Reyes v. State
, 84 S.W.3d 633, 638 (Tex. Crim. App. 2002).  When the State offered Exhibit 18, Huff had already testified without objection that he had made a request for a copy of the Koran while he was in jail.  Consequently, any complaint concerning Exhibit 18, a copy of this written request, was forfeited. 
 See id.
  We overrule Huff’s third point. 

V.  Denial of Mistrial

In his fourth point, Huff argues that the trial court erred by denying his request for a mistrial after the trial court sustained his objection to a statement made by the State during its final argument at punishment. 

The following exchange took place:

[PROSECUTOR]: Yes, ladies and gentlemen, we have asked you for a substantial sentence
, not that we can tell you, not that we can direct you.  But you have taken the oath.  You have accepted the responsibility.  You will be true to that oath, and we have no doubt about it.

I will admit to you I have not stood in front of many juries and asked them for so great a sentence on so young a man.

[DEFENSE COUNSEL]: Excuse me, Judge.  That’s outside --

(Exchanges inaudible)

THE COURT: -- hold on.

What you’ve done in the past--sustained as to what you have or haven’t done in the past.  It’s what this jury does today.

[DEFENSE COUNSEL] We ask the jury to be instructed to disregard.

THE COURT: Jury will disregard whatever Mr. Hatcher may have done in front of other juries just like you will disregard whatever other juries have or haven’t done.

Everyone remember that instruction?

THE JURY: Yes.

THE COURT: Can you follow that instruction concerning what Mr. Hatcher has or hasn’t done with other juries?

THE JURY: Yes, sir.

THE COURT: All right.

[DEFENSE COUNSEL]: We feel such instruction insufficient at law and move for mistrial.

THE COURT: Based on responses and observations of the Court, that motion is denied.

Based on the foregoing, Huff argues that the trial court’s instruction to the jury to disregard the complained-of remark was insufficient to cure the alleged error because the comment was extreme and manifestly improper.  The State contends that the trial court did not abuse its discretion by denying Huff’s request for a mistrial. 

When the trial court sustains an objection and instructs the jury to disregard but denies a defendant’s motion for mistrial, the issue is whether the trial court abused its discretion by denying the mistrial.  
See Hawkins v. State
, 135 S.W.3d 72, 77 (Tex. Crim. App. 2004); 
Primes v. State
, 154 S.W.3d 813, 814 (Tex. App.—Fort Worth 2004, no pet.).  Only in extreme circumstances, in which the prejudice is incurable, will a mistrial be required.  
See Hawkins
, 135 S.W.3d at 77.
  Such a circumstance exists when the improper conduct is “so prejudicial that expenditure of further time and expense would be wasteful and futile.”  
Id
.; 
see also Simpson v. State
, 119 S.W.3d 262, 272 (Tex. Crim. App. 2003), 
cert. denied
, 124 U.S. 2837 (2004).  Generally, an instruction to disregard impermissible argument cures any prejudicial effect.  
Wesbrook v. State
, 29 S.W.3d 103, 115 (Tex. Crim. App. 2000), 
cert. denied
, 532 U.S. 944 (2001).  In determining whether the trial court abused its discretion by denying a mistrial for improper argument, we consider the following factors: (1) the severity of the misconduct (prejudicial effect), (2) curative measures, and (3) the certainty of the punishment assessed absent the misconduct (likelihood of the same punishment being assessed).  
See Hawkins
, 135 S.W.3d at 77; 
Primes
, 154 S.W.3d at 815.

Here, the prosecutor’s argument that he had never asked for so great a sentence for such a young a man does not appear to have been “a willful and calculated effort on the part of the State to deprive appellant of a fair and impartial trial.”  
See Wesbrook
, 29 S.W.3d at 115.
  On the contrary, although we do not decide the propriety of the comment in terms of its admissibility, the prosecutor’s comment seems to be in response to defense counsel’s characterization of the State’s recommendation as to punishment as “laughable.”  Prior to the State’s comment, defense counsel argued, “I can’t tell you what to assess.  Sixty years, that’s a joke.  That’s laughable.  Anything like that is just is [sic] not reasonable.  Can’t imagine why anybody would even ask for that in this case.  Nobody’s dead.”  Although the prosecutor’s comment lies outside the record, its prejudicial effect, if any, was likely minimal at best.  Moreover, the trial court promptly instructed the jury to disregard the prosecutor’s comment, and the jury affirmatively responded that it could follow the instruction.  In terms of the certainty of the punishment absent the misconduct, the State elicited testimony from multiple witnesses concerning the events that transpired on the day of the offense.  Johnson’s neighbor testified that he assisted Johnson after Johnson appeared at his door bleeding, Johnson recounted the aggravated robbery in detail, and numerous officers described the crime scene and their associations with the investigation of the case.  The defense called only one witness during guilt/innocence, Huff, and the prosecutor cast doubt upon portions of Huff’s testimony throughout cross-examination.  Accordingly, we hold that the trial court’s instruction to the jury to disregard the prosecutor’s comment cured any resulting prejudicial effect and that the trial court did not abuse its discretion by denying Huff’s request for a mistrial.  
See Hawkins
, 135 S.W.3d at 77; 
Wesbrook
, 29 S.W.3d at 115.  We overrule Huff’s fourth point.

VI.  Conclusion

Having overruled all four of Huff’s points, we affirm the trial court’s judgment.

SUE WALKER

JUSTICE

PANEL B: LIVINGSTON, GARDNER, and WALKER, JJ.

DO NOT PUBLISH

Tex. R. App. P.
 47.2(b)

DELIVERED: April 21, 2005

FOOTNOTES
1:
See
 
Tex. R. App. P
. 47.4.

2:
Huff basically argues that there was no underlying theft because the property he retrieved belonged to Johnson’s ex-wife. 

3:
Huff makes a number of additional statements in his brief that we consider for our factual sufficiency examination only.  
See Zuniga, 
144 S.W.3d at 484, 486-87 (stating that a proper factual sufficiency review requires an examination of all the evidence)
. 
 
 For example, Huff argues that “Johnson’s claim that the incident was a robbery is simply not believable” because “Johnson admitted that [Wilson] had told him that he (Johnson) knew what this was about.”  Huff states that “there was no evidence as to what happened to the items that were taken” and that “[t]he complaining witness’s description of the items taken was quite vague.”