COURT OF APPEALS
SECOND DISTRICT OF TEXAS
FORT WORTH
 
NO. 2-04-245-CR
  
  
DAUDI 
HASHIM HUFF                                                            APPELLANT
A/K/A 
DAUDI H. HUFF
  
V.
  
THE 
STATE OF TEXAS                                                                  STATE
 
  
------------
 
FROM 
THE 372ND DISTRICT COURT OF TARRANT COUNTY
 
------------
 
MEMORANDUM OPINION[1]
 
------------
 
I. Introduction
        A 
jury convicted Appellant Daudi Hashim Huff of aggravated robbery and assessed 
his punishment at twenty years’ confinement.  In four points, Huff argues 
that the evidence is legally and factually insufficient to support his 
conviction and that the trial court erred by admitting a jail document showing 
Huff’s request for a copy of the Holy Koran and by denying Huff’s request 
for a mistrial.  We will affirm.
II. Factual 
Background
        Clarence 
Johnson, Jr. was at his apartment on the afternoon of August 4, 2001 when 
someone knocked on the door.  Johnson answered the door, and a man later 
identified by Johnson as Huff explained that he was looking for someone.  
Johnson responded that the person Huff was looking for probably did not live in 
the area, and Huff left.
        A 
few hours later, Huff again appeared at Johnson’s door. Johnson began to open 
the door, but it was kicked in, and Huff and another man, Malik Bunch, entered 
the apartment. Huff brandished a .357 revolver and Bunch carried a knife.  
Huff pointed the pistol at Johnson and ordered him to “sit your punk ass down, 
nigger.”  Johnson, surprised, sat down and asked what this was about; he 
asked the intruders if they were sure they had the right apartment.  Bunch 
began to remove items from Johnson’s apartment, including a television, 
telephone, and a fur coat.  Huff later asked Johnson questions concerning 
his ex-wife and about specific items of property while he simultaneously spoke 
on a cell phone.
        Sometime 
later, Bunch exited Johnson’s apartment and returned with Ephraim 
Wilson.  Johnson recognized Wilson as his ex-wife’s lover and the 
individual with whom she had a child during their marriage.  Johnson asked 
the man if his name was Ephraim, but Wilson claimed to be Ephraim’s 
uncle.  Johnson asked Wilson what this was about, and Wilson responded, 
“[N]igger, you know what this shit is about.”  Wilson held a knife to 
Johnson’s throat and accused him of kicking his ex-wife in the stomach while 
she was pregnant with Ephraim’s baby.  Wilson and Bunch then left, but 
Huff remained in the apartment with Johnson.
        Johnson 
asked Huff if he was going to kill him, and Huff responded, “[N]igger, make 
your peace with God.  Say your prayers.”  Johnson dropped to his 
knees, held his hands out, closed his eyes, and prayed.  Huff then 
instructed Johnson to stand up and to repeat after him.  Huff apparently 
began to say something in Arabic; Johnson turned around and saw Huff cover the 
pistol with a pillow and point it at him.  Huff fired, and Johnson was shot 
in the face.  Johnson managed to run downstairs and knock on his 
neighbor’s door.  The neighbor answered his door, pulled Johnson in, 
locked the door, retrieved his pistol, and called 911.  Police and 
paramedics arrived shortly thereafter and transported Johnson, who survived, to 
the hospital.
        Huff, 
Wilson, and Bunch were all subsequently arrested.  Huff was apprehended in 
Du Page County, Illinois and extradited to Texas.
        At 
trial, Huff testified that he did not intend to rob Johnson.  He claimed 
that he, Wilson, and Bunch went to Johnson’s apartment to retrieve items 
belonging to Johnson’s ex-wife.  Huff insisted that the television set 
and telephone belonged to Johnson’s ex-wife and that he did not take 
Johnson’s fur coat.  Huff testified that he brought the pistol along for 
protection and that he did not intend to shoot Johnson.  Huff further 
suggested that the pistol “went off” when he jumped back in response to 
Johnson’s sudden movement and that he held the pillow up over the pistol in 
order to scare Johnson.
        A 
jury convicted Huff of aggravated robbery and assessed his punishment at twenty 
years’ confinement.  This appeal followed.
III. Legal and 
Factual Sufficiency of the Evidence
        In 
his first point, Huff argues that the evidence is legally and factually 
insufficient.  Specifically, Huff contends that the evidence fails to show 
that he deprived Johnson of property that belonged to Johnson, as opposed to 
Johnson’s ex-wife, and that, therefore, “no rational jury could have found 
that appellant assaulted Clarence Johnson in the course of committing theft.”[2]  The State maintains that the evidence is legally and 
factually sufficient to support the verdict.
        In 
reviewing the legal sufficiency of the evidence to support a conviction, we view 
all the evidence in the light most favorable to the verdict in order to 
determine whether any rational trier of fact could have found the essential 
elements of the crime beyond a reasonable doubt.  Jackson v. Virginia, 
443 U.S. 307, 319, 99 S. Ct. 2781, 2789 (1979); Ross v. State, 133 S.W.3d 
618, 620 (Tex. Crim. App. 2004).  This standard gives full play to the 
responsibility of the trier of fact to resolve conflicts in the testimony, to 
weigh the evidence, and to draw reasonable inferences from basic facts to 
ultimate facts.  Jackson, 443 U.S. at 319, 99 S. Ct. at 2789.  
The trier of fact is the sole judge of the weight and credibility of the 
evidence.  See Tex. Code 
Crim. Proc. Ann. art. 38.04 (Vernon 1979); Margraves v. State, 34 
S.W.3d 912, 919 (Tex. Crim. App. 2000).  Thus, when performing a legal 
sufficiency review, we may not re-evaluate the weight and credibility of the 
evidence and substitute our judgment for that of the fact finder.  Dewberry 
v. State, 4 S.W.3d 735, 740 (Tex. Crim. App. 1999), cert. denied, 529 
U.S. 1131 (2000).  We must resolve any inconsistencies in the evidence in 
favor of the verdict.  Curry v. State, 30 S.W.3d 394, 406 (Tex. 
Crim. App. 2000).
        In 
contrast, when reviewing the factual sufficiency of the evidence to support a 
conviction, we are to view all the evidence in a neutral light, favoring neither 
party.  See Zuniga v. State, 144 S.W.3d 477, 481 (Tex. Crim. App. 
2004).  The only question to be answered in a factual sufficiency review is 
whether, considering the evidence in a neutral light, the fact finder was 
rationally justified in finding guilt beyond a reasonable doubt.  Id. 
at 484.  There are two ways evidence may be factually insufficient:  
(1) the evidence supporting the verdict or judgment, considered by itself, is 
too weak to support the finding of guilt beyond a reasonable doubt; or (2) when 
there is evidence both supporting and contradicting the verdict or judgment, 
weighing all the evidence, the contrary evidence is so strong that guilt cannot 
be proven beyond a reasonable doubt.  Id. at 484-85.  “This 
standard acknowledges that evidence of guilt can ‘preponderate’ in favor of 
conviction but still be insufficient to prove the elements of the crime beyond a 
reasonable doubt.”  Id. at 485.  In other words, evidence 
supporting a guilty finding can outweigh the contrary proof but still be 
insufficient to prove the elements of an offense beyond a reasonable doubt. Id.
        In 
performing a factual sufficiency review, we are to give deference to the fact 
finder’s determinations, including determinations involving the credibility 
and demeanor of witnesses.  Id. at 481; Cain v. State, 958 
S.W.2d 404, 407 (Tex. Crim. App. 1997).  We may not substitute our judgment 
for that of the fact finder’s.  Zuniga, 144 S.W.3d at 482.
        A 
proper factual sufficiency review requires an examination of all the 
evidence.  Id. at 484, 486-87. An opinion addressing factual 
sufficiency must include a discussion of the most important and relevant 
evidence that supports the appellant’s complaint on appeal.  Sims v. 
State, 99 S.W.3d 600, 603 (Tex. Crim. App. 2003).
        Section 
29.02 of the Texas Penal Code defines robbery as follows:
  
(a) A person commits an offense if, in the course of committing theft as defined 
in Chapter 31 and with intent to obtain or maintain control of the property, he:
  
(1) 
intentionally, knowingly, or recklessly causes bodily injury to another; or
  
(2) 
intentionally or knowingly threatens or places another in fear of imminent 
bodily injury or death.
 
Tex. Penal Code Ann. § 29.02(a) (Vernon 
2003).  A robbery becomes aggravated if the defendant commits a robbery as 
defined in section 29.02 and he “uses or exhibits a deadly weapon.”  See 
id. § 29.03(a)(2).  “‘In the course of committing theft’ means 
conduct that occurs in an attempt to commit, during the commission, or in 
immediate flight after the attempt or commission of theft.” See id. § 
29.01(1).  The evidence is sufficient to show ownership if it shows that 
the property was taken from the care, custody, and control of the complaining 
witness.  Jones v. State, 687 S.W.2d 430, 432 (Tex. App.—Houston 
[14th Dist.] 1985, no pet.).
        In 
the present case, the indictment tracked the language found in the Penal Code by 
charging that Huff
   
did then and there intentionally or knowingly, while in the course of committing 
theft of property and with intent to obtain or maintain control of said 
property, threaten or place Clarence Johnson in fear of imminent bodily injury 
or death, and the defendant did then and there use or exhibit a deadly weapon, 
to-wit: a firearm[.]
  
        The 
evidence demonstrates that Huff “cased” Johnson’s apartment by first 
approaching it and pretending to look for a non-existing person.  Upon 
discovering that Johnson did in fact reside at that particular apartment, Huff 
and Bunch forced their way inside; Bunch began to remove Johnson’s television, 
telephone, and fur coat while Huff pointed a .357 at Johnson.  Huff 
inquired about specific items of property purportedly in Johnson’s possession 
while simultaneously speaking on a cell phone.  One of Huff’s questions 
concerned an expensive piece of music equipment that Johnson owned but had 
previously pawned.  Huff carried the .357 during the entire robbery, and 
Johnson saw Huff cover the pistol with a pillow and point it at him.  
Johnson testified that all the possessions at his apartment, including those 
taken, belonged to him and not to his ex-wife.
        Huff 
argues that his own testimony constituted contravening evidence of such a nature 
that the State failed to meet its burden with regard to the theft element of 
aggravated robbery.[3]  Huff testified that he, 
Wilson, and Bunch “took only items they thought belonged to 
Elizabeth.”  Huff further testified that he did not intend to rob Johnson 
and that he neither took a fur coat nor inquired about Johnson’s music 
equipment.  However, it is the responsibility of the trier of fact to 
resolve conflicts in the testimony, to weigh the evidence, and to draw 
reasonable inferences from basic facts to ultimate facts.  Jackson, 
443 U.S. at 319, 99 S. Ct. at 2789; Zuniga, 144 S.W.3d at 481-82.  
The jury obviously chose to believe Johnson’s account of the events that day, 
and we may not substitute our judgment for that of the fact finder.  Zuniga, 
144 S.W.3d at 482; Dewberry, 4 S.W.3d at 740.
        Viewing 
all the evidence in the light most favorable to the verdict, a rational trier of 
fact could have concluded beyond a reasonable doubt that Huff committed the 
offense of aggravated robbery.  See Jackson, 443 U.S. at 319, 99 S. 
Ct. at 2789; Ross, 133 S.W.3d at 620.  Likewise, viewing the 
evidence in a neutral light, favoring neither party, the fact finder was 
rationally justified in finding guilt beyond a reasonable doubt.  See 
Zuniga, 144 S.W.3d at 481, 484.  Accordingly, we hold that the evidence 
was legally and factually sufficient to establish the theft element of 
aggravated robbery and, ultimately, the offense of aggravated robbery.  We 
overrule Huff’s first and second points.
IV. 
Admissibility of State’s Exhibit 18
        In 
his third point, Huff argues that the trial court erred by admitting State’s 
Exhibit 18, a document showing Huff’s request for a copy of the Koran.  
Huff testified at the guilt/innocence stage of the trial, and on direct 
examination, Huff’s attorney inquired into Huff’s religious 
preference.  Huff responded, “I study a lot of things.  I study 
Christianity, read the Bible every day, old and new testaments.  I also 
study a little bit of the Koran. I also study a little bit of buddhism and 
tallism [sic].”  Huff then denied knowing how to speak Arabic.
        On 
cross-examination, counsel for the State asked if Huff had “a little bit 
greater interest in the Koran than just a passing interest.”  Huff 
answered, “None of my interests I don’t think are passive 
interests.”  He further stated, “I – I have read sections of the 
Koran just like I’ve read most of the Old Testament and all of the New 
Testament.”  Counsel for the State then asked Huff whether he had 
requested a copy of the Koran and an Islamic chaplain while in jail.  Huff 
responded affirmatively and later admitted that he was “familiar with Arabic 
terms.”
        On 
re-direct, Huff’s counsel asked, “As far as the Koran is concerned or the 
Bible or whatever, you’re not on trial for being a terrorist, are you, or 
anything like that.”  Huff answered, “I hope not.”  On 
re-cross-examination, Huff agreed that it is “definitely terrifying” to have 
someone invade your home, put a gun in your face, and fire a bullet in your 
head.  Counsel for the State then offered Exhibit 18, Huff’s counsel 
objected on relevance grounds, and the trial court overruled the objection 
“based on the state of the entire record concerning the same subject 
matter.”
        The 
law is well settled that a defendant forfeits complaints about the introduction 
of evidence when the same evidence is subsequently admitted from another source. 
Reyes v. State, 84 S.W.3d 633, 638 (Tex. Crim. App. 2002).  When the 
State offered Exhibit 18, Huff had already testified without objection that he 
had made a request for a copy of the Koran while he was in jail.  
Consequently, any complaint concerning Exhibit 18, a copy of this written 
request, was forfeited.  See id.  We overrule Huff’s third 
point.
V. Denial of 
Mistrial
        In 
his fourth point, Huff argues that the trial court erred by denying his request 
for a mistrial after the trial court sustained his objection to a statement made 
by the State during its final argument at punishment.
        The 
following exchange took place:
  
[PROSECUTOR]: Yes, ladies and gentlemen, we have asked you for a substantial 
sentence, not that we can tell you, not that we can direct you. But you have 
taken the oath. You have accepted the responsibility. You will be true to that 
oath, and we have no doubt about it.
  
I 
will admit to you I have not stood in front of many juries and asked them for so 
great a sentence on so young a man.
 
          [DEFENSE 
COUNSEL]: Excuse me, Judge. That’s outside --
  
             
  (Exchanges inaudible)
  
          THE 
COURT: -- hold on.
   
What 
you’ve done in the past--sustained as to what you have or haven’t done in 
the past. It’s what this jury does today.
 
          [DEFENSE 
COUNSEL] We ask the jury to be instructed to disregard.
 
THE 
COURT: Jury will disregard whatever Mr. Hatcher may have done in front of other 
juries just like you will disregard whatever other juries have or haven’t 
done.

          Everyone 
remember that instruction?

          THE 
JURY: Yes.
  
THE 
COURT: Can you follow that instruction concerning what Mr. Hatcher has or 
hasn’t done with other juries?
 
          THE 
JURY: Yes, sir.

          THE 
COURT: All right.
 
[DEFENSE 
COUNSEL]: We feel such instruction insufficient at law and move for mistrial.
 
THE 
COURT: Based on responses and observations of the Court, that motion is denied.

Based 
on the foregoing, Huff argues that the trial court’s instruction to the jury 
to disregard the complained-of remark was insufficient to cure the alleged error 
because the comment was extreme and manifestly improper.  The State 
contends that the trial court did not abuse its discretion by denying Huff’s 
request for a mistrial.
        When 
the trial court sustains an objection and instructs the jury to disregard but 
denies a defendant’s motion for mistrial, the issue is whether the trial court 
abused its discretion by denying the mistrial.  See Hawkins v. State, 
135 S.W.3d 72, 77 (Tex. Crim. App. 2004); Primes v. State, 154 S.W.3d 
813, 814 (Tex. App.—Fort Worth 2004, no pet.).  Only in extreme 
circumstances, in which the prejudice is incurable, will a mistrial be 
required.  See Hawkins, 135 S.W.3d at 77. Such a circumstance exists 
when the improper conduct is “so prejudicial that expenditure of further time 
and expense would be wasteful and futile.”  Id.; see also 
Simpson v. State, 119 S.W.3d 262, 272 (Tex. Crim. App. 2003), cert. 
denied, 124 U.S. 2837 (2004).  Generally, an instruction to disregard 
impermissible argument cures any prejudicial effect. Wesbrook v. State, 
29 S.W.3d 103, 115 (Tex. Crim. App. 2000), cert. denied, 532 U.S. 944 
(2001).  In determining whether the trial court abused its discretion by 
denying a mistrial for improper argument, we consider the following factors: (1) 
the severity of the misconduct (prejudicial effect), (2) curative measures, and 
(3) the certainty of the punishment assessed absent the misconduct (likelihood 
of the same punishment being assessed). See Hawkins, 135 S.W.3d at 77; Primes, 
154 S.W.3d at 815.
        Here, 
the prosecutor’s argument that he had never asked for so great a sentence for 
such a young a man does not appear to have been “a willful and calculated 
effort on the part of the State to deprive appellant of a fair and impartial 
trial.” See Wesbrook, 29 S.W.3d at 115. On the contrary, although we do 
not decide the propriety of the comment in terms of its admissibility, the 
prosecutor’s comment seems to be in response to defense counsel’s 
characterization of the State’s recommendation as to punishment as 
“laughable.” Prior to the State’s comment, defense counsel argued, “I 
can’t tell you what to assess. Sixty years, that’s a joke. That’s 
laughable. Anything like that is just is [sic] not reasonable. Can’t imagine 
why anybody would even ask for that in this case. Nobody’s dead.” Although 
the prosecutor’s comment lies outside the record, its prejudicial effect, if 
any, was likely minimal at best. Moreover, the trial court promptly instructed 
the jury to disregard the prosecutor’s comment, and the jury affirmatively 
responded that it could follow the instruction. In terms of the certainty of the 
punishment absent the misconduct, the State elicited testimony from multiple 
witnesses concerning the events that transpired on the day of the offense. 
Johnson’s neighbor testified that he assisted Johnson after Johnson appeared 
at his door bleeding, Johnson recounted the aggravated robbery in detail, and 
numerous officers described the crime scene and their associations with the 
investigation of the case. The defense called only one witness during 
guilt/innocence, Huff, and the prosecutor cast doubt upon portions of Huff’s 
testimony throughout cross-examination.  Accordingly, we hold that the 
trial court’s instruction to the jury to disregard the prosecutor’s comment 
cured any resulting prejudicial effect and that the trial court did not abuse 
its discretion by denying Huff’s request for a mistrial.  See Hawkins, 
135 S.W.3d at 77; Wesbrook, 29 S.W.3d at 115. We overrule Huff’s fourth 
point.
VI. Conclusion
        Having 
overruled all four of Huff’s points, we affirm the trial court’s judgment.
    
   
                                                          SUE 
WALKER
                                                          JUSTICE
  
  
PANEL 
B:   LIVINGSTON, GARDNER, and WALKER, JJ.
 
DO 
NOT PUBLISH
Tex. R. App. P. 47.2(b)
 
DELIVERED: 
April 21, 2005


NOTES
1.  
See Tex. R. App. P. 47.4.
2.  
Huff basically argues that there was no underlying theft because the property he 
retrieved belonged to Johnson’s ex-wife.
3.  
Huff makes a number of additional statements in his brief that we consider for 
our factual sufficiency examination only.  See Zuniga, 144 S.W.3d at 
484, 486-87 (stating that a proper factual sufficiency review requires an 
examination of all the evidence).  For example, Huff argues that 
“Johnson’s claim that the incident was a robbery is simply not believable” 
because “Johnson admitted that [Wilson] had told him that he (Johnson) knew 
what this was about.”  Huff states that “there was no evidence as to 
what happened to the items that were taken” and that “[t]he complaining 
witness’s description of the items taken was quite vague.”