Opinion issued
May 6, 2010

 

 










 

 

 

 

 

 

 

In The

Court of Appeals

For The

First District of Texas

________________

 

NO. 01-09-00265-CR

________________

 



MICHAEL CHANNING GRIGGS,
Appellant

 

V.

 

THE STATE OF TEXAS, Appellee 

 

 



On Appeal from the 185th District Court

Harris County, Texas

Trial Court Cause No. 1156464

 

 



MEMORANDUM OPINION

          A jury found appellant, Michael Channing Griggs, guilty of possession with the intent to deliver more than four
grams but less than two hundred grams of cocaine.  See Act of May 22, 2001, 77th Leg.,
R.S., ch. 1188, § 2, 2001 Tex. Gen. Laws 2691 (amended 2009) (current version
at Tex. Health & Safety Code Ann.
§ 481.112 (a) & (d) (Vernon Supp. 2009)).[1]  Appellant entered a plea of true to the
enhancement paragraph, and the jury assessed punishment at 25 years’
imprisonment.  On appeal, appellant argues
that (1) the trial court erred in denying his motion to suppress, (2) the evidence
is legally insufficient to support his conviction, (3) the evidence is
factually insufficient to support his conviction, and (4) the trial court erred
in explaining the concepts of reasonable doubt, Fifth Amendment privilege, and
the presumption of innocence during voir dire. 
We affirm.

BACKGROUND

Just after midnight on March 4, 2008,
Harris County Precinct 3 Corporal Jose Quintanilla saw appellant drive a Nissan
Pathfinder into an apartment complex without using a turn signal.  Quintanilla had previously made arrests in
that apartment complex and knew it to be a “heavy narcotics” and “high crime
area.”  Quintanilla initiated a traffic
stop based on appellant’s failure to use his turn signal before making a left
turn into the complex.  Quintanilla
pulled behind appellant’s vehicle, activated his emergency lights, and used his
spotlight to illuminate the interior of the vehicle.  Quintanilla testified that appellant stopped
his vehicle, honked the horn several times, exited the vehicle and began to
approach the squad car.  Quintanilla
ordered appellant to return to his vehicle, but appellant did not immediately
comply.  Instead, appellant stood outside
the vehicle, adjusted his shoes and pants, and looked around as if “he was
going to try to run.”  Finally, appellant
complied with the orders and returned to his vehicle.  

Corporal Quintanilla approached the
driver’s side window with his flashlight and saw appellant attempting to place
a clear, plastic bag into the coin compartment of the center console.  Appellant said he was at the apartment
complex looking for his aunt.  Quintanilla
asked appellant for his driver’s license and insurance, and appellant responded
that he did not have any.  Then,
appellant opened the driver’s door, got out of the vehicle, and walked towards
the trunk.  Appellant told Quintanilla
that his identification might be in the back of the vehicle.  Quintanilla observed appellant open the
trunk, grab an ice chest, and “start[ed] placing clothes over it[.]”  Quintanilla ordered appellant to stop, turn,
and face him, but appellant ignored the orders and “continue[d] trying to move
this ice chest out of the way.”  Again,
Quintanilla ordered appellant to stop and appellant complied.  Quintanilla directed appellant to stand at
the front of his patrol car.

Then, Quintanilla approached the
passenger side of the vehicle to speak with the passengers.  The front passenger was Neice Merritt-Jones,
a 19-year-old female who was upset and crying. 
The rear passenger was Angelica Brooks, a 16-year-old female.  After asking the passengers to step out of
the vehicle, Quintanilla asked appellant for consent to search the vehicle and
appellant consented.

First, Quintanilla searched the area
where he observed appellant attempting to hide something in the coin
compartment and found “a clear bag with a white, powdery substance.”  Quintanilla performed a “NIK” field test on
the bag’s contents and determined the substance was cocaine.  As he continued searching, Quintanilla found a
pill bottle under the driver’s seat containing 14 pieces of “an off-white,
rock-type substance.”  The NIK test confirmed
that the bottle contained cocaine. 
Quintanilla also found what he believed to be a “crack cookie” in the
ice chest in the back of the vehicle.  He
explained that a crack cookie is a crack rock before it is broken into little
pieces, which are then sold.  Quintanilla
estimated the street value of the contraband found in the vehicle to be
approximately $600.  

Corporal Quintanilla arrested
appellant and read him his Miranda warnings.  As Quintanilla was driving appellant to the Harris
County Inmate Processing Center, appellant attempted to get Quintanilla’s
attention by tapping the window separating the two.  Quintanilla opened the window and asked if he
could help appellant with anything.  Appellant
“began asking what he was arrested for” and Quintanilla informed appellant that
“he was arrested for possession of a controlled substance with attempt [sic] to
deliver.”  In response, appellant “said,
that’s bullshit, he don’t sell drugs.  He
uses them.”  Then, appellant asked what
would happen to his vehicle, and Quintanilla “advised him that it was taken to
[the] substation for a possible seizure.” 
Appellant responded by saying, “That’s bullshit” and stated that “he
makes a lot of money selling dope and that as soon as he pays his bond, he will
be out to buy another ride.”  

The seized contraband was sent to the
Harris County Medical Examiner’s Office for chemical analysis.  Lab Technician Stephan Houck testified that
he tested the evidence and determined the pill bottle contained 2.47 grams of
cocaine, the clear plastic bag of white powder contained 1.45 grams of cocaine,
and the bag with the off-white, rock-like substance contained 7.48 grams of
cocaine.

Neice Merritt-Jones, appellant’s front
passenger, testified that she “met up with” appellant around 10 p.m. and rode
around with him in his vehicle as he made stops at three residences, a club,
and Wal-mart.  At trial, Merritt-Jones unequivocally
denied ever telling officers that she had been “riding around with [appellant]
all night selling drugs to crack heads.”  However, Merritt-Jones testified that she
recalled Angelica, the other passenger, making that statement to police
officers.  During her testimony, after a
short break Merritt-Jones claimed she “refreshe[d her] memory” and she equivocated
from her prior testimony denying making the statement.  Merritt-Jones testified that she “d[id]n’t
recall” making that statement to police officers, explaining “Maybe I did; but
now that I think of it, I don’t think I said that.”  Merritt-Jones testified that she had a sexual
relationship with appellant and admitted she was on probation for robbery.  Merritt-Jones testified she never saw any
drugs in the car, explaining “if [she] did [see the drugs], [she] would have
told him to take [her] home because . . . [she was] not supposed to be around
any of those things.”  

DISCUSSION

A.      Suppression of Seized Evidence

          In
his first issue, appellant argues that the trial court erred in denying his
motion to suppress evidence seized from his vehicle following the search.  Specifically, appellant argues that his
actions did not give rise to probable cause and the search was not incident to
arrest.  Alternatively, appellant argues
that this Court should abate the appeal and order the trial court to make
“written findings of fact and conclusions of law with which to supplement the
record on appeal.”

1.       Harmless
Error

          To
preserve a complaint for appellate review, a party must have presented to the
trial court a timely request, objection, or motion stating the specific legal
grounds and obtained a ruling on that objection.  Tex.
R. App. P. 33.1(a); Tex. R. Evid.
103(a)(1); Layton v. State, 280 S.W.3d 235, 238–39 (Tex. Crim.
App. 2009).  In addition, a party must object
each time the inadmissible evidence is offered or obtain a running
objection.  Lane v. State, 151 S.W.3d 188, 193 (Tex. Crim. App. 2004) (quoting Valle v. State, 109 S.W.3d 500, 509
(Tex. Crim. App. 2003)).  The error, if
any, in the admission of evidence becomes harmless where the same evidence
comes in elsewhere without objection.  Id. (citing Leday v. State, 983 S.W.2d 713, 718 (Tex. Crim. App. 1998)); see also Reyes v. State, 84 S.W.3d 633,
638 (Tex. Crim. App. 2002) (“[A] defendant who allows evidence to be introduced
from one source without objection forfeits any subsequent complaints about the
introduction of the same evidence from another source.”).

2.       Analysis

The record reveals that appellant did
not address the suppression issue pretrial or object at trial until the State
offered the seized contraband.  Prior to
appellant’s objection, the State’s witnesses provided substantial testimony without
objection describing the search of appellant’s vehicle, the seizure of contraband,
and the chemical analyses confirming that the substances were cocaine.  Corporal Quintanilla had already identified
the exhibits, describing each as the powder cocaine, crack cocaine rocks, and
crack cocaine cookie found in appellant’s vehicle.  Additionally, prior to appellant’s objection,
Lab Technician Stephen Houck testified that he analyzed the chemical makeup and
weighed each exhibit, determining that the pill bottle contained 2.47 grams of
cocaine, the clear bag of white powder contained 1.45 grams of cocaine, and the
bag containing the off-white, rock-like substance contained 7.48 grams of
cocaine.  

Because substantial testimony
describing the contraband was admitted without objection, any error admitting
the seized contraband itself was harmless because the same substantive evidence
was elsewhere introduced without objection. 
See Lane, 151 S.W.3d at 193
(quoting Leday, 983 S.W.2d at 718 (“overruling
an objection to evidence will not result in reversal when other such evidence
was received without objection, either before or after the complained-of
ruling.”)).

3.       Abatement

          In
the alternative, appellant contends that this Court should abate the appeal and
order the trial court to make findings of fact and conclusions of law.  In State
v. Cullen, the Court of Criminal Appeals held that, “[U]pon the request of
the losing party on a motion to suppress evidence, the trial court shall state
its essential findings.”  195 S.W.3d 696,
699 (Tex. Crim. App. 2006).  In Cullen, the Court explained that, “the
trial court’s refusal to [state its findings and conclusions] prevented the
court of appeals from meaningful review of the decision to grant the motion to
suppress.”  Id. at 698.  

In the present case, it is
unnecessary to review the trial court’s ruling or reasons for its ruling.  Even if we were to conclude that the trial
court erroneously admitted the contraband, the exhibits were cumulative of the
testimonial evidence already admitted without objection and would not warrant
reversal.  See Lane, 151 S.W.3d at 193.  Accordingly, no abatement is necessary.  We overrule appellant’s first issue.

B.  Sufficiency of the Evidence

In
his second and third issues, appellant contends that the evidence presented at
trial is legally and factually insufficient to support the jury’s verdict.  Specifically, appellant contends that the
evidence is insufficient to show that he exercised care, custody, or control
over the cocaine.[2] 

 

1.       Standards
of Review

In our
legal-sufficiency review, we view the evidence in the light most favorable to
the verdict and ask whether any rational trier of fact could have found the
crime’s essential elements beyond a reasonable doubt.  Jackson v. Virginia, 443 U.S. 307, 319
(1979); Evans v. State, 202 S.W.3d 158, 161 (Tex. Crim. App. 2006).  The standard is the same for both direct and circumstantial
evidence.  King v. State, 895
S.W.2d 701, 703 (Tex. Crim. App. 1995).  
We do not resolve any conflict of fact, weigh any evidence, or evaluate
the credibility of witnesses, as this was the function of the trier of
fact.  See King v. State, 29
S.W.3d 556, 562 (Tex. Crim. App. 2000); Dewberry v. State, 4 S.W.3d 735,
740 (Tex. Crim. App. 1999).

           In our factual-sufficiency review, we view all
of the evidence in a neutral light.  Cain
v. State, 958 S.W.2d 404, 408 (Tex. Crim. App. 1997).  We will set aside the verdict only if (1) the
evidence is so weak that the verdict is clearly wrong and manifestly unjust or
(2) the proof of guilt is against the great weight and preponderance of the
evidence.  Johnson v. State, 23
S.W.3d 1, 11 (Tex. Crim. App. 2000). 
Under the first prong of Johnson, we cannot conclude that a
conviction is “clearly wrong” or “manifestly unjust” simply because, on the
quantum of evidence admitted, we would have voted to acquit had we been on the
jury.  Watson v. State, 204 S.W.3d
404, 417 (Tex. Crim. App. 2006).  Under
the second prong of Johnson, we also cannot declare that a conflict in
the evidence justifies a new trial simply because we disagree with the jury’s
resolution of that conflict.  Id.  Before finding that evidence is factually
insufficient to support a verdict under the second prong of Johnson, we
must be able to say, with some objective basis in the record, that the great
weight and preponderance of the evidence contradicts the jury’s verdict.  Id. 
In our factual-sufficiency review, we must also discuss the evidence
that, according to appellant, most undermines the jury’s verdict.  Sims v. State, 99 S.W.3d 600, 603
(Tex. Crim. App. 2003).

The fact-finder alone determines the
weight to be given contradictory testimonial evidence because that
determination depends on the fact-finder’s evaluation of credibility and
demeanor.  Cain, 958 S.W.2d at
408–09.  As the determiner of the
credibility of the witnesses, the fact-finder may choose to believe all, some,
or none of the testimony presented.  Id.
at 407 n.5; see also Lancon v. State, 253 S.W.3d 699, 705–07 (Tex.
Crim. App. 2008).

          2.       Unlawful
Possession of a Controlled Substance

          A
person commits an offense if he knowingly or intentionally possesses a
controlled substance.  See Tex. Health & Safety Code Ann. §§
481.102(3)(D), 481.112 (Vernon Supp. 2009). 
When an accused is charged with unlawful possession of drugs, the State
must prove (1) the defendant exercised actual care, custody, control, or
management over the contraband and (2) the accused knew the object he possessed
was contraband.  Poindexter v. State,
153 S.W.3d 402, 405 (Tex. Crim. App. 2005). 
The law does not require exclusive possession of the drug.  Roberson v. State, 80 S.W.3d 730, 735 (Tex.
App.—Houston [1st Dist.] 2002, pet. ref’d) (citing Harvey v. State, 487
S.W.2d 75, 77 (Tex. Crim. App. 1972)). 
“The mere fact that a person other than the accused might have joint
possession of the premises does not require the State to prove that the
defendant had sole possession of the contraband, only that there are
affirmative links between the defendant and the drugs such that he, too, knew
of the drugs and constructively possessed them.” Poindexter, 153 S.W.3d
at 412 (emphasis in original).  








          “When
the accused is not in exclusive possession of the place where the substance is
found, it cannot be concluded that he had knowledge of and control over the
contraband unless there are additional independent facts and circumstances
which affirmatively link him to the contraband.”  Id. at 406.  Evidence that affirmatively links an accused
to the substance is proof that he possessed it knowingly.  Brown v. State, 911 S.W.2d 744, 747
(Tex. Crim. App. 1995).  Affirmative
links may be shown by direct or circumstantial evidence, but in either case it
must establish to the requisite level of confidence that the accused’s
connection with the drug was more than just fortuitous.  Poindexter, 153 S.W.3d at 405–06
(citing Brown, 911 S.W.2d at 747). 
As explained in Poindexter, “The ‘affirmative links rule’ is
designed to protect the innocent bystander from conviction based solely upon
his fortuitous proximity to someone else’s drugs.”  Id. at 406. 

          “Mere
presence at the location where drugs are found is thus insufficient, by itself,
to establish actual care, custody, or control of those drugs.”  Evans v. State, 202 S.W.3d 158, 162 (Tex. Crim. App. 2006).  However, presence or proximity, when combined
with other evidence or “links”, may well be sufficient to establish that
element beyond a reasonable doubt.  Id.  It is not the number of links that is
dispositive, but rather the logical force of all of the evidence.  Id. 
The following non-exclusive “affirmative links” have been recognized
as sufficient, either singly or in combination, to establish a person’s
connection to contraband: 

(1) the defendant’s presence when a search is
conducted; (2) whether the contraband was in plain view; (3) the defendant’s
proximity to and the accessibility of the narcotic; (4) whether the defendant
was under the influence of narcotics when arrested; (5) whether the defendant
possessed other contraband or narcotics when arrested; (6) whether the
defendant made incriminating statements when arrested; (7) whether the
defendant attempted to flee; (8) whether the defendant made furtive gestures;
(9) whether there was an odor of contraband; (10) whether other contraband or
drug paraphernalia were present; (11) whether the defendant owned or had the
right to possess the place where the drugs were found; (12) whether the place
where the drugs were found was enclosed; (13) whether the defendant was found
with a large amount of cash; and (14) whether the conduct of the defendant
indicated a consciousness of guilt.

 

Id.
at 162 n.12.

 

          3.       Legal Sufficiency

          Appellant asserts that the evidence
is insufficient to link him to the contraband to establish actual care,
custody, or control of the drugs.

          A
review of the evidence shows that Corporal Quintanilla testified that, when he
approached the door of the vehicle appellant was driving, he observed appellant
attempting to place a clear, plastic bag into the coin compartment of the
center console.  That bag was determined
to contain cocaine.  Quintanilla also
observed appellant attempting to hide an ice chest, which was later found to
contain a crack cookie.  Under the
driver’s seat, Quintanilla found a pill bottle containing 14 crack cocaine
rocks.  After being arrested, appellant
volunteered several incriminating statements. 
Appellant asked the officer what was happening to “his vehicle” indicating his right to possess the vehicle.  Quintanilla testified that appellant denied
selling drugs, but admitted using them, and then later said “he makes a lot of
money selling dope[.]”  These statement
support the finding that appellant knowingly possessed the drugs.

          Several
of the non-exhaustive factors mentioned in Evans are present in this
case.  See 202 S.W.3d at 162.  The
facts tending to connect appellant with the cocaine include: (1) appellant was
present when the search was conducted; (2) the clear, plastic bag containing
powder cocaine was in plain view when appellant was in the vehicle; (3) the drugs
found in the coin compartment and under the driver’s seat were both located in
close proximity to where appellant was sitting and would have been easily
accessible to him; (4) other contraband was found in the back of the vehicle in
the ice chest that appellant attempted to cover with clothes; (5) appellant
made incriminating statements after being arrested; (6) appellant made furtive
gestures in an attempt to conceal the contraband in the coin compartment and
the ice chest; (7) the drugs were found in an enclosed space, the vehicle
appellant was driving; and (8) after he was arrested, appellant asked Corporal
Quintanilla “what happened to his vehicle,”
indicating that appellant had a right to possess the vehicle where the drugs
were found.

          In
support of his legal insufficiency argument, appellant points to evidence admitted
for the limited purpose of the suppression hearing held outside the presence of
the jury.  Specifically, he points to his
testimony during the suppression hearing explaining how and when he acquired
possession of the vehicle.  Appellant did
not testify or otherwise introduce the evidence during trial on the merits.  Accordingly, we do not consider it in our
review of the evidence supporting the conviction.

 
        Viewing the evidence in the
light most favorable to the jury’s verdict, we conclude that the jury could
have reasonably inferred from the cumulative force of the evidence that
appellant exercised actual care, custody, or control of the contraband.  See Evans, 202 S.W.3d at 166 (concluding
that evidence, “when viewed in combination and its sum total, constituted amply
sufficient evidence”).  We conclude that
the evidence is sufficient for a rational trier of fact to have found the
elements of possession of cocaine beyond a reasonable doubt.  See Tex.
Health & Safety Code Ann. § 481.112.           We
overrule appellant’s second issue.

4.       Factual
Sufficiency

          In
his third issue, appellant makes several assertions in support of his factual
sufficiency argument.  

First, appellant asserts, “It was
undisputed that Officer Quintanilla had arrested Appellant’s aunt for
possession of narcotics in this car several days prior to Appellant’s arrest.”  However, to the extent that appellant is
implying that the drugs belonged to his aunt, the argument ignores key
testimony to the contrary.  Quintanilla
testified that he stopped the same vehicle two weeks prior to this offense and
ultimately arrested all four people in the vehicle, including appellant’s
aunt.  All four people were taken to jail
and a “detailed inventory” was performed on the vehicle.  Quintanilla testified that, because it was a
drug arrest, the officers thoroughly searched the vehicle, including the air vents,
console compartments, floor mats, underneath the seats, the rear truck area,
and the glove box.  Quintanilla testified
there was no possibility that the officers’ detailed inventory missed the
contraband found two weeks later in the vehicle when appellant was stopped.  Quintanilla testified that appellant’s aunt,
the owner of the vehicle, had not been released from jail between the time of her
arrest and appellant’s arrest, so there was “no way she was back in that car”
after it had been inventoried.  

Next, appellant asserts that he was
not in exclusive possession of the car and was standing outside and away from it
upon the officer’s initial contact with him. 
However, the fact that appellant momentarily got out of the vehicle does
not negate the cumulative force of the “affirmative links” connecting him to
the contraband.  

Additionally, appellant asserts that
it was “undisputed that . . . Neice Merritt-Jones did not see Appellant
exercise any care, custody or control over the cocaine despite having spent the
entire evening with him in the car.” 
Appellant misstates the record.  Merritt-Jones
testified that she saw State’s Exhibit 3, the pill bottle containing crack
rocks, in appellant’s vehicle the night of the offense but she did not think there
was anything in the bottle.  Moreover, while
Merritt-Jones testified that she
never saw any of the drugs that night, the jury was free to disbelieve her
testimony.  See Cain, 958 S.W.2d at 407 n.5 (fact-finder
may choose to believe all, some, or none of testimony presented); Lancon,
253 S.W.3d at 705–07.  

Lastly, appellant asserts, without citing
to the record, that Corporal Quintanilla’s testimony was contradictory.[3] 
Even if the testimony was contradictory, that would not make the
evidence factually insufficient because the fact-finder alone determines the
weight to be given to contradictory testimony. 
See Cain, 958 S.W.2d at 408–09; see also Poindexter,
153 S.W.3d at 406 (“In deciding whether the evidence is sufficient to link the
defendant to contraband, the trier of fact is the exclusive judge of the
credibility of the witnesses and the weight to be given to their testimony.”).  Here, the fact-finder was able to make an
assessment of the facts and found that the State proved appellant’s possession
of cocaine beyond a reasonable doubt.

           When viewed in a neutral light, the evidence
shows that many of the recognized links are present in this case and the
cumulative force of the evidence is sufficient to connect appellant to the
actual care, custody, control or management of the cocaine found in the vehicle.  See Evans, 202 S.W.3d at 162, 166.  The evidence is not so weak that the verdict
is clearly wrong and unjust.  Laster v. State, 275 S.W.3d 512, 518 (Tex.
Crim. App. 2009).  Also, there is no
objective basis in the record to conclude that the great weight and
preponderance of the evidence contradicts the jury’s verdict.  Watson, 204 S.W.3d at 417.  We hold the evidence is factually sufficient
to support the conviction for possession of cocaine with intent to deliver.  See Tex.
Health & Safety Code Ann. § 481.112. 
We overrule appellant’s third issue.

 

D.      Trial Court’s Statements During Voir Dire 

          In
his fourth issue, appellant argues that the trial judge erred in explaining the
concepts of reasonable doubt, Fifth Amendment privilege, and presumption of
innocence during voir dire.  Although
appellant did not object at trial, he points to five statements by the trial
judge as reversible error.  Specifically,
appellant asserts that the statements, viewed in their totality, unjustly
influenced the jury.

1.       Applicable
Law

As a general rule, to preserve an
error for appellate review, the complaining party is required to make a “timely,
request, objection, or motion.”   Tex. R. App. P. 33.1(a)(1).  The requirement of a timely objection applies
to comments made by the trial court during voir dire.  Marshall
v. State, — S.W.3d —, 2009 WL 3400977, at *2 (Tex. App.—Houston [1st Dist.]
Oct. 22, 2009, no pet.) (holding appellant’s complaint was not preserved where
she failed to object to trial court’s remarks during voir dire explaining
burden of proof) (citing Fuentes v. State,
991 S.W.2d 267, 273 (Tex. Crim. App. 1999) (holding that appellant waived
complaint about trial court’s explanation of reasonable-doubt standard during
voir dire by failing to renew objection when trial court repeated explanation);
Moore v. State, 907 S.W.2d 918, 923
(Tex. App.—Houston [1st Dist.] 1995, pet. ref’d) (holding appellant waived
complaint about trial court’s comment on weight of evidence during voir dire)).

          Appellant
acknowledges that he did not object to the court’s comments during voir dire,
but argues that no objection was necessary to preserve the complaint, relying
upon Blue v. State, 41 S.W.3d 129
(Tex. Crim. App. 2000) (plurality op.).  A
plurality of the Court of Criminal Appeals in Blue held that a trial judge’s unobjected-to comments tainted the
presumption of innocence, amounting to fundamental error and, therefore, no
objection was necessary to preserve the complaint for appellate review.  Id. at
132.  Appellant argues that we should
reach the same conclusion here because this case involves a judicial comment
made during voir dire that was either a “structural error” or “fundamental
error.”  However, appellant concedes in
his brief that the comments, “standing alone, might not have amounted to error”
at all.

          2.       Trial Judge’s Statements

          For
the first time on appeal, appellant points to five statements made by the trial
judge during voir dire as fundamental error.

Statement 1.  First, appellant argues that the
following statement is erroneous because of the court’s use of “until and
unless” instead of “unless.”

[THE COURT]:    So
until somebody has weighed this testimony whether a person is guilty of the
offense or not or whether the State can prove it or not is a question
mark.  So our concept of criminal justice
says you must be willing to give a person charged of a criminal offense the
presumption of innocence until and unless as a juror you are convinced beyond a
reasonable doubt of that person’s guilt. 


 

          Statement 2.  Second, appellant selectively quotes the
following exchange between the court and a venire member regarding Fifth
Amendment privilege:

[THE COURT]:    Why
is it that a person charged with a criminal offense might invoke the Fifth
Amendment privilege?  You all know.  You just are hesitant to tell me.  What’s the first thing that comes to your
mind?

 

[VENIREPERSON]:      They
don’t want to say anything if they’re not innocent.

 

[THE COURT]:    They
don’t want to say anything—I’m going to flower that up a little bit.  They don’t want to say anything that’s going
to hurt their case.  They don’t want to
say anything that will incriminate them. 
Fair enough.  

 

Appellant fails to include the
context of this statement.  The court was
trying to involve the veniremembers by asking them for their thoughts on the
issue.  The judge took several comments
from the venire and, then, followed up by explaining that there are various
reasons why a defendant might choose to invoke the Fifth Amendment privilege
not to testify.  The judge gave the example
that the defendant may be nervous and, as a result, not “articulate . . .
concepts well.”  The trial judge
explained that the reasons for not taking the stand may have “[n]othing to do
with criminal conduct” so that is why “the instruction is . . . you can’t
consider it for any reason.”  

          Additionally,
appellant points to several statements as erroneous, arguing that they “skewed
the venire panel’s perception regarding the burden of proof and the presumption
of innocence.”  Statements 3, 4, and 5 were
made during the court’s discussion of the punishment phase of trial.  Before these statements were made, the court
explained: 

In a criminal case there are two parts.  The first part is the guilt or innocence
stage.  You have heard the State’s
allegation in this particular piece of paper. 
If a jury hears the facts of the case and decides the person is not
guilty, everybody goes home, it’s over. 
If a jury hears the facts of the case and decides that the person is
guilty, there is a second phase of the trial called the punishment phase.

 

          Statement 3.  Appellant points to the following
statement made by the judge during the court’s discussion of considerations
involved in the punishment phase:

[THE COURT]:    First,
what are the facts?  What do we find that
the person is guilty of? 

 

A reading of the statement in context
dispels appellant’s allegation that the comment skewed the jury’s perception:

[T]he important thing is that you recognize there is a
wide, wide possible range, and it’s a wide range so that it will force the jury
to be able to consider all the possibilities. 
First, what are the facts?  What
do we find that the person is guilty of? 
If nothing, then everybody goes
home.

 

(Emphasis added.)

          Statement 4.  Appellant also quotes the following statement
of the trial judge discussing the punishment phase and explaining that panel
members must “be willing to keep an open mind as to the full range of possibilities”:

[THE COURT]:    All
we are asking is, are you willing to commit to keeping an open mind as to all
those possible options until, first, you tell us what, if anything, the person
is guilty of, and then see what other facts come into play and then you make
whatever decision you think is proper based on the facts and the individual
you’re sitting in judgment of.

 

It is not clear from appellant’s
brief what he finds objectionable about this statement.

Statement 5.  Lastly, appellant points to the
following statement made during the court’s discussion of the punishment phase:

[THE COURT]:    Well,
certainly I’m hoping our criminal justice system is that we can deter people
from returning to criminal conduct. 
Sometimes we’re successful, sometimes we’re not, but I think
statistically I think we’re running about 60 percent success rate.  Yes, you’re right, that means 40 percent
fail, but you could look at it either way.

 

A review of the context obviates any
concern of impropriety in the judge’s comment. 
The judge asked the veniremembers if they would be able to “in a proper
case . . . consider as little as 2 years’ probation all the way up to life in
prison and a 10,000-dollar fine in a proper case[.]”  In response, Veniremember 6 indicated he
would not be able to assess probation and explained, “If he’s caught with
substance and he’s only given 4 years or at least 5 years, he will keep doing
the same thing because he has a tendency that people who do this, they’ll
always come back.”  In other words, the
veniremember implied that people guilty of possession will “always” be repeat
offenders.  The statement by the judge,
quoted above, was in response to the veniremember’s comment and was likely the judge’s
attempt to correct the inaccurate representation of recidivism rates.  

          3.       Analysis

          As this Court has previously noted, “Blue is a plurality opinion and thus,
does not constitute binding precedent.”  Marshall, 2009 WL 3400977, at *3 (citing
Pearson v. State, 994 S.W.2d 176, 177
n.3 (Tex. Crim. App. 1999)); see also
Jasper v. State, 61 S.W.3d 413, 421 (Tex. Crim. App. 2001) (holding Blue plurality opinion was not binding
authority).  Even if Blue were binding, the comments in this case are a far cry from
those in Blue.  Cf. 41
S.W.3d at 130.   

In Blue, the trial court told prospective jurors that (1) the trial
delay was due to the defendant’s attempt at making a plea bargain with the State
and the defendant’s prolonging the negotiations, (2) the trial court would
prefer the defendant to plead guilty, and (3) there were reasons an innocent
defendant might not testify, but, even knowing she was guilty, defense counsel
might put Sister Theresa on the stand because nobody would believe she would
lie.  Id.
at 130.   Although the defendant in Blue did not object to the comments at
trial, a plurality of the Court of Criminal Appeals reversed the intermediate
appellate court’s holding that the error was waived.  The judges voting to reverse, however, disagreed
in their rationale for the reversal. 
Four judges concluded the trial court’s comments “tainted appellant’s
presumption of innocence in front of the venire” and were fundamental error of
constitutional dimension.  See id. at 132 (opinion of Johnson, J.);
see also Saldano v. State, 70 S.W.3d
873, 889 n.72 (Tex. Crim. App. 2002) (explaining Blue ).  A fifth judge
concluded that the trial court’s comments violated the right to an impartial
judge.  See Blue, 41 S.W.3d at 138 (opinion of Keasler, J.); see also Saldano, 70 S.W.3d at 889 n.72.

Turning to the present case, the
comments by the trial judge do not amount to fundamental error.  Even if Blue
was binding authority, the comments complained of in this case do not rise
to such a level as to “bear on the presumption of innocence or vitiate the
impartiality of the jury.”  See Jasper, 61 S.W.3d at 421 (holding judge’s
comments “aimed at clearing up a point of confusion” and judge’s “irritation at
the defense attorney” did not amount to degree of prejudice discussed in Blue). 
Appellant’s fourth issue is overruled.      

CONCLUSION

          We affirm the judgment of the trial court.

 

 

 

                                                          

George C. Hanks, Jr.

                                                          Justice

 

Panel consists of Justices Hanks, Bland, and Wilson.[4]

Do not publish.  See Tex. R. App. P. 47.2(b).











[1]
The 81st Texas Legislature amended
Texas Health & Safety Code Section 481.112, effective September 1,
2009.  The amendments do not affect the
disposition of this case.





[2]
Appellant was convicted of possessing cocaine
with intent to deliver, but appellant’s argument on appeal addresses only the
element of possession.  Appellant states
in his brief, “In order to prove the ‘intent to deliver’ element of the crime,
the government may use ‘circumstantial evidence, such as the quantity of drugs
possessed, the manner of packaging, and the presence of the accused in a drug
house[,]” citing Taylor v. State.  See 106
S.W.3d 827, 831 (Tex. App.—Dallas 2003, no pet).  However, other than this one sentence, appellant
provides no citations, argument, or discussion of the relevant facts to address
the intent to deliver element. 
Similarly, appellant does not dispute the weight of the contraband found
or the determination that the substances found were controlled substances.  Accordingly, we limit our review to the
argument set out in appellant’s brief and address the element
“possession.”  See Tex. R. App. P.
38.1(i) (requiring brief to contain a clear and concise argument with
appropriate citations).  





[3]
Appellant simply points to his argument “as
discussed above[.]”  Appellant appears to
be referring to his argument in his first issue.  However, in that issue appellant attempted to
draw inconsistencies between Quintanilla’s testimony at the suppression hearing
and at trial.  We do not consider
testimony from a pretrial hearing held outside the presence of the jury in our
sufficiency of the evidence review.  





[4]
Davie L. Wilson,
retired Justice, First Court of Appeals, participating by assignment.